12   253
122a  219

## CARTER & CARTER *vs.* HAMMETT & BALCH.

Where it appears, in an action by a lessor, for rent, against a person alledged to be an assignee of the lessee, that the defendant is in possession under the lease and with the assent of the lessee, and that he has all the benefits of an actual assignee, he will be estopped from setting up that he is assignee only by parol agreement and not by a valid written instrument. But if the defendant is in only as under-tenant, he may show that fact.

The question, in such an action, is not whether the defendant is assignee by a valid instrument as between him and the lessee, but whether he has held himself out to the landlord, or to the world, as such.

Whether a lease is to be deemed *property*, so as to pass under a general assignment of the lessee's property, or not, depends upon the election of the

---

Carter *v.* Hammett.

---

assignee to enter under it, or his determining his right to elect, by some other act, or omission to act. Instead of being property, such a lease may be a heavy incumbrance ; or a debt instead of a benefit.

This was an appeal by the plaintiffs from a judgment entered upon the report of a referee. The complaint alledged that on the 30th day of June, 1846, the plaintiffs demised for the term of four years and eleven months, certain premises in the city of New-York, known as the second, third and fourth stories of the stores numbers 84 and 86 Pearl-street, with free ingress and egress to and from the store by the front entrance and middle door, to Samuel C. Bishop and William G. Leonard, for the rent or sum of eleven hundred dollars per annum, payable after the first day of August, 1846, quarterly on the usual quarter days. That on or about the first day of November, 1847, the lessees assigned, with the assent of the plaintiffs, the said lease to the defendants, who entered upon said premises. That on the first day of August, 1849, there was due to the plaintiffs the sum of two hundred and seventy-five dollars for rent due that day; that the defendants refused to pay the same; the plaintiffs therefore demanded judgment against the defendants respectively for the sum of two hundred and seventy-five dollars together with interest from the first day of August, 1849, and costs.

The defendants, by their answer, admitted the execution of the lease by the plaintiffs to Bishop & Leonard, as alledged in the complaint. But they denied that the said lessees assigned, with the assent of the plaintiffs, the said lease to the defendants. They alledged that on or about the eighth day of August, 1845, one John W. Latson and Margaret his wife, made and executed under their hands and seals an indenture of mortgage, and delivered the same to one Benjamin W. Strong, to secure to him, the said Strong, the sum of ten thousand dollars, with interest thereon at the rate of seven per cent per annum, and for the securing the payment of the said sum of ten thousand dollars with the interest to grow due thereon, the said John W. Latson and his said wife did mortgage certain lands and premises therein described, commonly called the Pearl-street House; that on the same eighth day of August, 1845, the said Strong did make and de-

liver under his hand and seal an assignment in writing, and did then and there sell, assign, transfer and set over unto Almet Reed all of his, the said Strong's, interest in the said mortgage; that on the third day of September, 1846, the said Almet Reed did, under his hand and seal, make and deliver to Daniel A. Baldwin an assignment, wherein and whereby he did sell, assign, transfer and set over unto the said Baldwin all of the right, title and interest which the said Reed had, of, in and to the said mortgage; that on or about the fifth day of September, 1846, Baldwin filed his certain bill in the then court of chancery, before the vice chancellor of the first circuit, to foreclose the said mortgage, making Latson and wife, and others, parties defendants thereto; that such proceedings were thereupon had that on the third day of May an order or decree was duly enrolled in the said suit, decreeing a sale of the mortgaged premises; that afterwards, and under and by virtue of the said order or decree, one David R. Garniss, as one of the masters of the said court, did sell the said premises mentioned in the above bill of complaint, and that on the said sale these defendants became the purchasers thereof; that on the 26th day of October, 1847, the said David R. Garniss did execute and deliver to the said defendants a deed of the said mortgaged premises; that they did, as the owners of the said Pearl-street House, under and by virtue of the said master's deed, enter into the possession of the premises described in the said deed, and did use and occupy the same as landlords, and continued to occupy the same until the 18th day of April, 1848; that on or about the 1st day of November, 1847, under and by virtue of the oral consent of the plaintiffs and the said Bishop & Leonard, and not by any written consent on the part of the plaintiffs, or the assignment of any lease from the said Bishop & Leonard, the defendants did use and occupy the said premises belonging to the plaintiffs, and mentioned and described in the complaint, and did use and occupy the same *as tenants of the said plaintiffs* until on or about the 18th day of April, 1848; that during the time the defendants did so use and occupy the premises, the defendants paid to the plaintiffs the rent therefor, at and after the rate of

one thousand one hundred dollars per annum; that on or about the 18th day of April, in the year 1848, one George Seely entered upon the premises mentioned in the complaint, and used and occupied the same as a tenant from the said 18th day of April, 1848, to on or about the 1st day of August in the year 1849, and paid to the plaintiffs for the rent thereof at and after the rate of one thousand one hundred dollars per annum, for all the moneys which became due for the said rent of the said premises until the 1st day of May, 1849; that on or about the 8th day of August, 1845, one John W. Latson and Margaret his wife made, executed and delivered to one Benjamin W. Strong, a mortgage on the said premises called the Pearl-street House, to secure to the said Strong the payment of the sum of the ten thousand four hundred dollars, and conditioned to pay Strong the said sum of ten thousand four hundred dollars on the 8th day of August, 1848, with interest thereon, at and after the rate of seven per cent per annum, payable semi-annually; that on or about the 8th day of August, 1845, the said Strong duly assigned the said mortgage to the Trust Fire Insurance Company of the city of New-York, and that on or about the 14th day of April, 1847, the said Trust Fire Insurance Company of the city of New-York, duly assigned the said mortgage to Almet Reed, and that on or about the 10th day of June, in the year 1847, the said Almet Reed duly assigned the said mortgage to one Peter Van Dugin; that on or about the 28th day of August, 1848, the said Peter Van Dugin commenced an action in the supreme court of the state of New-York, against the said John W. Latson and Margaret his wife, and others, for the foreclosure of the said mortgage and the sale of the premises therein mentioned and described; that such proceedings were thereupon had, that on or about the 5th day of December, in the year 1848, a judgment or decree of the said court was rendered in the said action, that the said mortgaged premises, being the said Pearl-street House, be sold by or under the direction of the sheriff of the city and county of New-York, to raise the amount due on the said mortgage, and that the said premises so called the "Pearl-street House," were afterwards, to wit, on the 30th

day of April, in the year 1849, sold by the said sheriff of the city and county of New-York, and that the said John W. Latson did on the said sale become the purchaser, landlord and owner thereof. The defendants claimed and insisted that the plaintiffs were not entitled to recover of them any sum whatever for the rent claimed in and by the complaint of the plaintiffs; and they denied that they were indebted to the plaintiffs in the sum of two hundred and seventy-five dollars, or in any sum whatever, and they demanded judgment against the plaintiffs for the costs of this action.

The plaintiffs in their reply alledged, that on or about the 1st day of November, 1847, the lessees in the lease mentioned in the answer did assign the said lease to the defendants and with the assent of the plaintiffs; that the lease set out in the answer was the lease so made between the plaintiffs as lessors, and Samuel C. Bishop and W. F. Leonard as lessees; that as to the statements set out in the answer of the defendants in relation to the mortgage made by Latson and wife to Strong, and the matters stated in relation thereto, they knew nothing and could neither deny nor admit the same, nor had they any knowledge sufficient to form a belief; and in relation to the foreclosure of said mortgage and sale thereunder, the plaintiffs neither admitted nor denied the same, nor had they any knowledge sufficient to form a belief; that the defendants entered and kept the Pearl-street House as hotel-keepers, about the first day of November, 1847, as they were informed, and therefore admitted using the premises leased by the plaintiffs, as the assignees of said Bishop and Leonard, and acknowledging themselves as such assignees. The plaintiffs further replied that they were informed and believed and therefore admitted, that one George Seely did on or about the 18th day of April, 1848, enter upon the said premises and did use and occupy the same, but the plaintiffs denied that the said Seely was their tenant, but entered as the tenant of the defendants. And the plaintiffs admitted that the said Seely occupied the said premises till the 1st day of August, 1849. That as to all the matters stated in the answer of the defendants in relation to the mortgage made by John W. Latson and wife, and all other mat-

ters relating thereto, to the foreclosure of the said mortgage, the sale thereunder, and purchase under said foreclosure, the said plaintiffs knew nothing and had no means of forming a belief, and therefore neither admitted nor denied the same.

The cause was referred to a sole referee, to hear and determine the issues therein and report thereon to this court. He reported that from the pleadings and evidence in said action he had ascertained, and did accordingly report, the following facts; that the plaintiffs by an instrument bearing date the 30th of June, 1846, demised to Samuel C. Bishop and William F. Leonard the second, third and fourth stories of the premises in question, for a term of four years and eleven months from the first day of June, 1846, at the yearly rent of $1100; which premises were commonly called the Carter property; that the said premises consist of bed-rooms, parlors, barber's saloon, bar room, wash room, and a store on the floor with the bar room, and, together with other premises adjoining and belonging to other owners, were known as the hotel called the Pearl-street House and used as such, although the last mentioned premises were often alone called the Pearl-street House, and designated as such separately; that the said Bishop and Leonard were at the said date also lessees of the last mentioned premises, and occupied and used these and the premises demised as aforesaid as a hotel or public house; that in the said lease from the plaintiffs it was provided that should the adjoining part of the hotel (the Pearl-street House proper) be surrendered to the landlord, or should the landlord for any cause whatever obtain the possession thereof, that then the term thereby demised should cease and be determined. That Bishop and Leonard occupied said premises from the 1st of June, 1846, until some time in February, 1847; about which time they made an assignment in writing to the firm of Breden & Hovey, creditors of theirs, for the benefit of the said creditors alone, and that they included in said assignment all their interest in the lease aforesaid. That Bishop alone continued to occupy the same premises as a hotel until the 1st of November, 1847; that he was succeeded by the defendants, who occupied them for the same purpose from the said 1st of November, 1847, until the

Carter *v.* Hammett.

18th of April, 1848, and for that time paid the rent reserved in the aforesaid lease to the plaintiffs; that on or about the said 18th of April, 1848, the defendants let and gave possession of the same to one George Seely, and gave a written lease of that portion of the Pearl-street House not belonging to the plaintiffs, (the Pearl-street House proper,) the defendants having become owners thereof by virtue of a conveyance to them from David R. Garniss, master in chancery, bearing date the 26th of October, 1847, subject however to two prior mortgages. He further reported that the defendants received possession of the Carter portion as well as the other portion of said hotel, from Bishop, on or about the 1st of November, 1847, when he ceased to be the proprietor thereof; that Bishop at the same time handed over and transferred to them the lease first above mentioned, executed by the plaintiffs, and the furniture contained in the house; that Bishop having paid the rent to one of the plaintiffs up to the 1st of November, 1847, and conducted said plaintiff to the office of the hotel, introduced him to said Balch as one of the owners of the Carter portion of the hotel, and told him that the plaintiffs would be their future landlords and would thereafter collect the rents—that the defendants received the rents for, and let lofts and other portions of the Carter property from different persons at various times between the 1st November, 1847, and 18th April, 1848, and after the last mentioned date, Seely paid the rent for the Carter premises, falling due between the 18th of April, 1848, and the 1st of June, 1849, to the defendants, and on some occasions paid the rent reserved in the aforesaid lease to the plaintiffs on the order of Balch, one of the defendants— that the defendants claimed rent from Seely therefor until the 1st August, 1849, and gave an order to the plaintiffs on Seely for the last mentioned rent, who refused to pay it, on the ground that several parties claimed a right to it. The referee further reported that it was not proved before him that Bishop & Leonard or either of them made a written assignment of the lease aforesaid to the defendants or either of them; but on the contrary, he concluded from the whole testimony, that no such assignment was ever executed by Bishop & Leonard or either of

them. That the plaintiffs claimed from the defendants the sum of $275 for rent due on the 1st August, 1849, for the premises demised in the aforesaid lease, as assignees of the term ; they insisting before the referee that there was sufficient in the testimony from which an assignment might be inferred. The referee held that although it has been repeatedly decided that it is enough for the plaintiff in such cases to give general evidence from which an assignment may be inferred ; this could mean nothing more than that there may be prima facie evidence to presume the existence of such an assignment as the law requires, namely, an assignment in writing subscribed by the party assigning. And he decided that courts could not, if they would, dispense with the requirements of the statute ; that in this action, even if there were sufficient prima facie evidence of an assignment in writing, the direct evidence rebutted the presumption. He therefore found that there was nothing due from the defendants to the plaintiffs.

*A. W. Clason, Jun.* for the plaintiffs. · I. He who enters into the possession of lands by consent or permission of the tenant, will be considered, in respect to the rights of the landlord, as substituted in place of the tenant. (8 *Wend.* 175.) II. When the presumption of assignment is once raised, accompanied by acts consistent with that relation, it can only be rebutted by proving an under-tenancy, or avoided by proving a sub-assignment. The proof here raised the presumption of an assignment. The rebutting proof was the evidence of the execution of a prior assignment. This was not enough. (*Armstrong* v. *Wheeler,* 9 *Cowen,* 88.) III. The testimony of Leonard, independent of the question of law, was of no weight. No proof of delivery of the assignment to Breden and Hovey was made. It was a revocable trust, and without proof of acceptance was nugatory. (24 *Wend.* 280.) IV. The defendants are estopped both by their acts and their admissions.

*R. M. Harrington,* for the defendants. I. The alledged assignment of the lease by Bishop & Leonard, to the defendant,

was void, because not in writing. (2 *R. S.* 135, § 6, *2d ed.*) When the assignment is the issue, it must be proved. ( *Gibbs* v. *Nash,* 4 *Barb. S. C. Rep.* 449. *Coles* v. *Bowne,* 10 *Paige,* 526. II. Occupation of premises furnishes but presumptive proof of an assignment of the lease to the occupant. This presumption may be rebutted, like other presumption. ( *Gibbs* v. *Nash,* 4 *Barb. S. C. Rep.* 449. *Armstrong* v. *Wheeler,* 9 *Cowen,* 88. *Coles* v. *Brown,* 10 *Paige,* 526.) III. In this case, there is evidence that there was no assignment, and so the referee determined. A question of fact found either by a referee or a jury will not be reversed by the appellate court. As to the finding of the referee being conclusive, see *Rathbun* v. *Stanton,* (6 *Barb. S. C. Rep.* 141;) *Fleming* v. *Hallenbeck,* (7 *Id.* 271;) *Quackenbush* v. *Ehle,* (5 *Id.* 469;) *Camp* v. *Pulver,* (*Id.* 91;) *Spencer* v. *Utica and Schenectady Railroad Co.,* (*Id.* 337;) *Smith* v. *Gugerty,* (4 *Id.* 614;) *Hunt* v. *Fish,* (*Id.* 324;) *Lansing* v. *Van Allstine,* (2 *Wend.* 561.) IV. There can be no presumption raised in this action of an assignment, from the occupancy of defendants. The passing of the title from John W. Latson was agreed to be the event which should make void the lease. The defendant's occupancy being *incompatible* with the condition of the title in Latson, no presumption can obtain that such occupancy was under the lease. ( *Williams* v. *Woodward,* 2 *Wend.* 487.) V. An assignee is liable only in respect of his possessing, and not for a breach before assignment, or after he quits possession. (*Doug.* 184, 460, 458, 764. *Salk.* 199. *Cro. Eliz.* 383. 1 *Freem.* 336. *Doug.* 452, 764. *Noys' Max.* 91. 1 *Show.* 340. *Woodfall's Land. and Ten.* 276. *Bac. Abr. tit. Covenant.* 1 *B. & P.* 764. 2 *East,* 580.) In this case the defendants gave a lease to Seely, but not of the Carter property. VI. There was an eviction on the part of the plaintiffs, or a retaking of the premises by the plaintiff before the expiration of the term mentioned in Bishop & Leonard's lease. They are thereby estopped from bringing this action.. ( *Curl* v. *Lenell,* 19 *Pick.* 25.) VII. Declarations of one of two tenants in common are inadmissible to bind his co-tenant. ( *Cowen & Hill's Notes,* 170, *and cases there cited.*

---

Carter *v.* Hammett.

---

*By the Court,* MITCHELL J. In *Armstrong* v. *Wheeler,* (9 Cowen, 88,) the defendant was sued for rent, as assignee of a lease. Parol proof was given that the defendant had bought the lease from the lessee, and that he had continued in possession or offered to sell the lease, and had rented out the property until the time when the rent was demanded. The supreme court held the defendant was liable as assignee. They said " when the action is brought against the defendant as assignee of a term, and the issue is on the assignment, it will be enough for the plaintiff to give *general evidence* from which an assignment may be inferred, as that the defendant is in possession or has paid rent. The defendant may show that he is not assignee, but only under-tenant to the lessee."

If it were nesessary for the plaintiff to prove that the defendant was assignee under an instrument valid as between assignor and assignee, then such title (at least in leases for more than one year,) could only be in writing, and the rule would apply that the party shall produce the best evidence in his power; and so the plaintiff could not prove the defendant to be assignee except by producing the assignment, or accounting for its nonproduction. But this has never been required of the landlord. The reason of the rule probably is that the defendant is shown to be in possession under the lease, and he and the lessee agree that he shall remain there. The landlord, therefore, can not disturb his possession; for as he is in under the lease he is in by permission of the landlord. Whether his title is good, or not, as between him and the lessee, is immaterial to the landlord. That is a matter between the occupant and lessee alone. If they choose to transfer title by an informal instrument, or by parol only and a transfer of possession, that would be a contract which a court of equity might enforce, and which no third person (unless under peculiar circumstances,) could dispute. The occupant being thus in possession, in a way that the landlord can not disturb, and having all the benefits of an actual assignee, is estopped from setting up that he is assignee only by parol agreement and not by a valid written instrument. But if he is in only as under-tenant, he may show that fact.

Carter v. Hammett.

The question, therefore, in a suit by a landlord, for rent, against one alledged to be assignee, is not whether the defendant is assignee by a valid instrument as between him and the lessee, but whether he has held himself forth to the landlord, or to the world, as such: and is analogous to the case of one not interested in a firm, yet holding himself out as a partner in it, and so making himself liable as a partner, though he should clearly prove that he was no partner. As such indirect proof is sufficient to establish the relation of assignee, the like proof, and comparatively slight, may show its termination, and that a new occupant was received as assignee.

The referee in this case found for the defendant, because the evidence showed affirmatively that there was no assignment in writing; although he found that the lease was handed over and transferred to the defendants—by parol as is to be inferred—and that they occupied or rented out the premises. In this the referee erred.

The defendants however insist that the pleadings and evidence show that they were not assignees, but tenants of the plaintiffs, and that their tenancy had expired. The evidence is not very clear either way. Parol evidence of a written assignment by the lessees, of their property, was received. This was irregular ; as the assignment itself should have been produced, and it is left quite uncertain whether that assignment actually included the lease or not. If it were supposed to be included only because the lessees made a general assignment of their property, the supposition was erroneous ; for a lease is deemed property, or not, in such an assignment, at the election of the assignee, until he enters under it, or by some other act, or omission to act, determines his right to elect. Instead of being property, it may be a heavy incumbrance; or a debt instead of a benefit.

From this parol proof of a general assignment to Breden and Hovey it was inferred that the lease was assigned to them, and so it was argued that the lease was not assigned to the defendants. The conclusion was unsupported, until it should be shown that the lease passed to and was accepted by Breden and Ho-

vey ; and even then it might have passed from them to the defendants.

Without examining, minutely; the evidence it was left uncertain whether the defendants meant to be understood, and caused the landlords to understand, that they entered as the tenants of the latter, or under the old lease. This matter being left so uncertain, on the evidence, it is to be considered there is a direct allegation by the defendants in their answer that they entered not under any assignment of the lease, but that they occupied the premises as *the tenants* of the plaintiffs until the 18th of April, 1848, and that after that time George Seely entered on the premises and occupied them as the tenant of the plaintiffs, and that the plaintiffs do not deny that the defendants and Seely so held as *tenants* of the plaintiffs, but only repeat that the lessees assigned to the defendants—thus leaving the allegation of tenancy uncontroverted and admitted. This assumption is at least strong evidence that the defendants were tenants, where the proof is uncertain on that subject ; if it be not *conclusive* as a matter of pleading, which, under the circumstances, it perhaps may not be.

But against this, on the other hand, is the special report of the referee, finding that the lease was assigned to the defendants, though not in writing.

To remove these difficulties the report should be set aside and a new trial granted ; the costs of appeal to abide the event ; and the plaintiffs to have liberty, on an affidavit showing that in fact they always regarded and treated the defendants as assignees of the lease and not as their tenants, to amend their reply on payment of such costs which have accrued since the reply was put in, as the judge at special term shall direct ; and on waiving the costs in his favor accrued since the reply was put in.

[NEW-YORK GENERAL TERM, December 1, 1851. *Edmonds, Mitchell* and *King*, Justices.]