[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 199 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 200 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 201 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 202 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 203 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 204 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 205 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 206 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 207 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 208 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 211 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 213 
By the agrement entered into November 1, 1871, between the Genesee Valley Company and Lauren C. Woodruff, a leasehold estate was carved out of the fee belonging to the former and the consideration agreed to be paid therefor by the latter was the rent reserved, although in an unusual form. (Woodruff v. ErieRailway Co., 93 N.Y. 609, 615; People v. O'Brien,
111 id. 1.) As the lease from Woodruff to the Erie Company embraced all that he had acquired from his lessor, it operated as an assignment in fact, although not such in form, of the entire term granted by the original lease. (Stewart v. Long Island R.R.Co., 102 N.Y. 601.) Thenceforward the legal relations of the three parties named were those *Page 215 
of lessor, lessee and assignee under a lease. The Erie Company became liable for the interest and principal, as it fell due, both by privity of contract and by privity of estate. (Wood's Landl. Ten. 742; Gear's Landl. Ten. §§ 125, 126.) The former liability depended upon its express promise to pay, whether it entered into possession or not, and could be discharged only by payment, while the latter depended upon entry into possession under the lease, and could be avoided by assigning the entire term and relinquishing possession. When the receiver of the Erie Company took possession and operated the road, he also became liable, in effect, as assignee during the period of his occupation. The foundation and nature of his liability was defined by this court when it said that "He could not take possession of the property, and enjoy its use and occupation, without incurring a liability for the payment of the rent under the lease by which his predecessor secured its possession. The principles which govern the liability of an assignee of a lease seem to be applicable to the case of a receiver, and he would be equitably and legally chargeable with the payment of rent under a lease for such time as he continued to occupy the property demised." (Woodruff v. Erie R. Co., supra.)
The next and last possessor of the leasehold estate was the appellant company, and the origin, nature and effect of its possession present the chief points of controversy on this appeal. It is clear that the lease was neither destroyed nor affected by the foreclosure of the mortgage held by the Farmer's Loan and Trust Company, nor by the action brought to dissolve the Erie Company, because all of the contracting parties were not before the court in either of those actions, and the decree was made subject to all prior liens. The leasehold estate, therefore, was still in existence, unimpaired, when the appellant company entered into possession of the property. By what authority and in what capacity did it make that entry?
The claim of the plaintiffs that it entered as assignee in fact, because the judgment of foreclosure and the referee's *Page 216 
deed thereunder actually transferred the lease, does not appear to be well founded.
The mortgage foreclosed doubtless covered the interest of the Erie Company in the lease, and the judgment authorized its sale as a part of the property embraced by the foreclosure, but it also authorized the plaintiffs therein to abandon and disclaim their lien upon any of the nineteen leases not regarded as valuable, by notifying the referee to that effect before the sale. Thereupon, as the decree provided, that officer was required not to expose the leasehold estates, so abandoned, for sale as part of the mortgaged premises. No reason is perceived why a creditor has not the right to waive or release a part of his security, but if there is any question as to this, because, in the case under consideration, the debtor did not ask for it, it cannot be raised collaterally. The remedy must be sought in the suit in which the judgment was rendered, as even third persons, who claim rights under that judgment, are bound by the provisions affecting those rights. It does not appear expressly whether the requisite notice was given or not. It appears, however, by the referee's report of sale that the lease in question was not embraced in the property sold, and that he publicly announced before the sale that neither the Woodruff lease nor the estate created thereby would be included in the sale. The terms of sale corresponded with this announcement. The report of the referee was confirmed, and his conveyance, made under the direction of the court, expressly and specifically excepted from the effect of the sale the lease in question. The deed from the purchasing trustees contained the same exception, and the receipt of the appellant company was for the property enumerated in the referee's report of sale. Under these circumstances and those relating to the subject more fully detailed elsewhere, we think that the presumption arises that the notice had been given. When an officer of the court does an act "which would be a violation of his duty unless a certain condition had first been performed, it will be presumed that such condition was performed." (Davis v. Bowe, 118 N.Y. 55, 60.) Moreover, *Page 217 
independent of this presumption, the evidence shows an unmistakable intention on the part of the court, its officer and the grantees that the lease, which created, defined and, in a certain sense, constituted the leasehold estate, should be excepted from the transfer.
While the appellant company was the successor of the Erie Company, still as to the ownership of the property sold under the mortgage, at least, it was a new corporation. This plainly appears from the title, text and object of the statutes under which the reorganization was effected. (Laws of 1876, chap. 446, § 1; Laws of 1874, chap. 430; C. O.R. Co. v. Miller,114 U.S. 176; Hoard v. C. O.R. Co., 123 id. 222.) It acquired title, therefore, to no property of the old company by virtue of the foreclosure proceedings, except such as was actually transferred to it under the direction of the court. If it were true, as claimed by the plaintiffs, that all the property covered by the mortgage, including such as might be subsequently acquired, must be sold as an entirety, and that the purchaser must accept each and every part cum onere, a railroad corporation by making bad bargains after it had mortgaged its property could destroy the value of the mortgage.
The plaintiffs further contend that said lease was transferred to the appellant company by the receiver under the powers conferred upon him by the Special Term, and that it accepted such transfer. Title to the lease was vested in the receiver by virtue of his appointment, and it may be that the new company was willing to accept the naked title from him without any covenant to assume the burdens thereof, when it was unwilling to accept title under the foreclosure sale and assume performance of all the covenants, as required by the judgment. Certain acts of the appellant company and of the receiver are difficult to explain upon any other theory. In his petition of May 3, 1878, that officer asked for authority "to transfer, surrender and deliver" to the appellant company "all the property and franchises in his hands and under his control as receiver," subject to certain exceptions not now material. The order made was as broad as the prayer of the petition, and each *Page 218 
was broad enough to cover the lease, which was still held by the receiver. Yet the transfer, made July 18, 1878, of various executory contracts did not include the lease. That transfer, however, does not allude to said order, but purports to have been made pursuant to the judgment of foreclosure, and it required the purchasers to assume the burdens. No transfer, depending on said order for authority, appears to have been made until December 4, 1879, when the receiver, by an assignment of that date, transferred to the appellant company "all the property of the Erie Railway Company, real and personal, remaining in my possession not heretofore transferred and surrendered to you as above recited, in order that you may become completely possessed of all the property of the Erie Railway Company which was sold under foreclosure and which became vested in you by such sale and the subsequent conveyances and assignments above referred to." It does not appear whether any transfer other than those mentioned was made or not, except under certain proceedings in the courts of the state of New Jersey, which affected the property in that state only, and did not include the lease in question. The assignment of July 26, 1878, to the Erie Company is not regarded as important, for the effect of a conveyance to a dying corporation, made by its own receiver in anticipation of its dissolution, is not apparent.
The appellant company, right after its organization, entered into possession of the property covered by the lease, and it has remained in possession and has operated the railroad ever since, yet it failed to show upon the trial in what capacity it entered or by what authority it operated the road. The theory of the plaintiffs as to transfer by the receiver finds some support in the entry into possession by the appellant company. It cannot be heard to say that it entered as a trespasser, for that would be asserting its own wrongful act as a defense to the claim of one who had the right to waive the tortious element, if it existed, and to insist upon the entry as valid with all the consequences that may be implied therefrom. (Schuyler v. Smith, 51 N.Y. 309; Conway v. Starkweather, 1 Den. *Page 219 
113.) The law presumes, under the circumstances, that it entered rightfully, and as it failed to show any other authority, may not the act of entry be regarded as a practical construction of the order of May 3, 1878, and the subsequent action of the receiver? At all events it entered into possession in subordination to the lease, for in no other way could it have entered, except as trespasser. As long as the leasehold estate was in existence no person or body corporate could give it authority to enter, except under the lease. What presumption arises from the fact of possession and occupation under these circumstances? Where a person other than the lessee is shown to be in possession of leasehold premises, the law presumes that the lease has been assigned to him. (Williams v. Woodard, 2 Wend. 487, 493;Acker v. Witherell, 4 Hill, 112, 116; Carter v. Hammett,
12 Barb. 253; 18 id. 608; Cross v. Upson, 17 Wis. 618; 1 Washb. on Real Prop. 509; Taylor's Landl. Ten. § 450; 2 Phil. on Ev. 150; Woodfall's Landl. Ten. 276.) It further presumes that the assignment was sufficient to transfer the term and to satisfy the statute of frauds. (Bedford v. Terhune, 30 N.Y. 453, ) It does not, however, presume that the assignee entered into any express covenant to pay rent, so as to make himself liable through privity of contract, or otherwise than through privity of estate. The appellant company, therefore, under the facts proved, became prima facie liable as assignee of the lease during the period that it operated the road. This involved the obligation to perform all covenants running with the land that were broken during said period, including the covenant to pay rent, or that which stood in the place of rent. The presumption that a party other than the lessee, who is found in the possession of leased premises, holds them under an assignment of the lease, may be rebutted by showing that he was in as an under-tenant. (Armstrong v. Wheeler, 9 Cow. 88; Carter v.Hammett, 12 Barb. 253.)
It is claimed that the supposed assignee may rebut this presumption by proving that he never had any assignment, and there is authority for the position. (Quackenboss v. Clarke,
12 Wend. 555; Welch v. Schuyler, 6 Daly, 412.) This, we *Page 220 
think, is open to question, provided proof of that fact involves proof of entry without right or as a trespasser, but it is not necessary to so decide in this case, as the appellant company failed to show that it never had an assignment of the lease in question. Proof that it did not take title in a certain way, as under the foreclosure proceedings, is no proof that it did not take title at all. No effort was made to show that the documents read in evidence were the only papers in existence relating to the subject. The receiver was not called to testify that he never executed and delivered to the appellant company any instrument purporting to be an assignment of, or relating to the lease, other than those in evidence. No officer of the company was asked whether he knew of any such paper. There was a failure to meet the burden of proof resting upon the putative assignee in this regard, and hence the presumption arising from possession ripened into a fact. The appellant company, therefore, is to be regarded as assignee on the lease during the time that it has occupied the leasehold estate, and as such liable for the rent accruing subsequent to the date of entry, at least until the new arrangement was made, which is alleged to have relieved it from further liability to pay rent as stipulated in the lease.
The appellant company operated the railroad covered by the lease, without complaint or question, until May 14, 1879, when it notified the original lessor and lessee, the latter being at the time one of the two mortgagees then surviving, that it was operating the road at a loss, and that it would cease to operate it on the first day of July following. Appended to this was a notice signed "Erie Railway Company by H.J. Jewett, President and Receiver," that on "behalf of the Erie Railway Company and on behalf of myself as receiver of that company, all rights to compensation for improvements and additions and all rights of reclamation for losses are hereby reserved." Negotiations followed which resulted in an arrangement between the Genesee Valley Company, Lauren C. Woodruff and the appellant company, by which the last named, at the request of the others, agreed to continue the *Page 221 
operation of the road at its own expense for the public benefit, provided it should not "be compelled to pay any rent for the use of the same." The mortgagees, through Woodruff, had notice of these negotiations and of the result thereof, but they made no objection, and did not attempt to take possession of the road, although they had the right to do so. What was the effect of this arrangement? As we have held, the appellant company was, at the time, in possession as naked assignee, with no express promise on its part to pay rent. This is equally true whether its title rests upon an assignment presumed, but not otherwise proved, or upon the order of May 3, 1878, as neither source of title required anything but a bare, operative transfer.
It was, therefore, liable only in respect of its possession and for such covenants only as might be broken while privity of estate continued. It was in its power to escape this liability at any time by assigning the lease and abandoning possession, even if it were done for the express purpose of avoiding further payment of rent. (Childs v. Clark, 3 Barb. Ch. 52; Tate v.McCormick, 23 Hun, 218; Durand v. Curtis, 57 N.Y. 7; 2 Platt on Leases, 416.)
Privity of estate would thus be destroyed, and with it the foundation of future liability.
It is clear that, ordinarily, the lessor, lessee and assignee of a lease may modify its terms by reducing the amount of rent. Can they do so when there is a mortgage upon the property covered by the lease, but not upon the leasehold estate itself? Why can they not, in the absence of fraud and when, as in this case, there is no covenant on the part of the assignee for the benefit of the mortgagee? Without such a covenant, or some express promise, the assignee of a lease is under no more obligation to the mortgagee of a lessor, than a grantee is to the mortgagee of a grantor. (Vrooman v. Turner, 69 N.Y. 280, 283; Pardee v.Treat, 82 id. 385; Root v. Wright, 84 id. 72; Seward v.Huntington, 94 id. 104.)
A mortgagee out of possession has no lien upon rents. Until he elects to take possession, or moves for a receiver, the rents *Page 222 
belong to the lessor, who may contract as he chooses with the assignee in regard to them. (Argall v. Pitts, 78 N.Y. 239;Rider v. Bagley, 84 id. 461; Wyckoff v. Scofield,
98 id. 475.)
When the mortgagee takes possession, he does so subject to all arrangements made in good faith between a lessor, lessee and assignee for the relief of the latter, unless there was an express promise by him inuring to the mortgagee's benefit. The fact that rent is payable as interest on a mortgage does not affect the liability of an assignee, except while privity of estate continues. When the appellant company was about to abandon possession of the road, and extinguish the privity of estate, it was induced not to do so by the arrangement under consideration. How long that arrangement continued does not appear, but we think that so long as it remained in force, it effectually reduced the amount of rent payable by the appellant company as assignee in possession,
The judgment of the General Term should be modified by deducting therefrom the amount deposited in the Metropolitan Trust Company of New York under the stipulations of December 10, 1889, and, as modified, affirmed without costs in this court to any party.
All concur, except BRADLEY, and HAIGHT, JJ., not sitting.
Judgment accordingly.