ALBERT JOURNEAY and others. *v.* MATTHIAS BRACKLEY and STEPHEN A. UTLEY, assignees, &c.

Where a lease of land is made upon any condition—such as the payment of rent—the condition is annexed to the land, and goes with it, and the assignee of the lessee, if he accepts the assignment, takes the estate subject to the condition, and is liable for the payment of the rent as long as he continues assignee.

*It seems* this liability is at an end when he assigns to another, even though he assigns to an irresponsible person for the express purpose of avoiding future liability.

But there is a distinction between an express or specific assignment, by a lessee, of his interest in a lease, and an assignment made by him of all his property for the benefit of creditors. In the former case, the assignee, by accepting the lease, creates a privity of estate between himself and the lessor, and having established that relation, it is immaterial whether he enters upon and enjoys the land or not. But in the case of a general assignment for the benefit of creditors, although the assignees accept the assignment, and enter upon the execution of the trust, whether they will become assignees of a lease, held by the insolvent at the time of the assignment, is altogether at their election.

Such an election must be signified by some unequivocal act. Either the lease must be specifically mentioned in the assignment, or the assignees, after accepting the trust, must have acted in such a way, in respect to the leasehold premises, as to show that they have elected to take the interest which the insolvent before had therein. It will not be implied from the mere acceptance of a general assignment.

The assignees for the benefit of creditors have a reasonable time to ascertain whether the lease can be made available to creditors or not, and during that time may take such steps as they may consider necessary for the purpose of making the property productive. What is a reasonable time for that purpose, considered?

*It seems* that the same principles apply to executors in respect to a decedent's estate.

What facts are sufficient evidence of an intention on the part of the assignees in such a case to accept the lease, considered; and numerous cases upon the question collected and examined.

J. leased to T. & R. a store for a term of years. Pending the lease, T. & R. failed, and made a general assignment of all their property, including a stock of goods in the store, to B. & U., who took possession, notified J. that they did not intend to take the building, and would have nothing to do with the lease; but remained there for thirty-six days, selling the insolvent assignor's stock, part of it at private sale, and part of it at auction. At the end of that time, and before the quarter's rent became due, they vacated the premises, and J. retook possession and collected rent from some under-tenants of T. & R., occupying a part of the demised premises. *Held*—

Journeay v. Brackley.

I. That these facts did not show an election on the part of B. & U. to become assignees of the lease, so as to render them liable for rent. Such an entry upon the demised premises for the purpose of disposing of the insolvent's effects, accomplished in an expeditious and summary manner, is no evidence of an election on their part to accept and make use of the lease.

II. That no action could be maintained against them on these facts for use and occupation. The leasehold estate remained in T. & R., the insolvent assignees. The privity of estate had never been changed; and T. & R. were in legal possession under a valid subsisting lease, the occupation of B. & U. being solely by their permission and authority.

A contract between the parties, either express or implied, is essential to maintain the action for use and occupation; and there can be no implied contract between the owner and the occupant, where a lease from the owner to a third party is shown to be outstanding. Unless the occupant is the assignee under that lease, there is neither privity of estate nor of contract to support an action against him by the owner, for rent.

The Marine Court, at general term, should not reverse a judgment appealed from, and order final judgment in favor of the appellant, where it appears, or may reasonably be presumed from the case presented, or the nature of the controversy, that upon a new trial additional facts might be established sufficient to charge the appellant with liability in the action.

In such a case, on reversing a judgment in favor of the plaintiff, a new trial should be awarded.(a)

APPEAL by plaintiffs from a judgment of the Marine Court at general term. This was an action for rent. The plaintiffs, in January, 1854, executed to the firm of Thompson & Roesler a lease of the store No. 14 Maiden Lane, for two years and two months, from the first of March, 1854. The rent was $7,500 per annum, and was payable on the first days of May, August, November, and February, in each year. By the terms of the lease, Thompson & Roesler were at liberty to relet the premises without the consent of the lessors. It was also provided, that if the premises, or any part of them, should become vacant during the term, the lessors (the present plaintiffs) might re-enter and relet the same as the agents of the lessees, appropriating the amount received, first to the costs, secondly to the rent due, and paying the balance to the lessees. Under this lease Thompson &

(a) See *Griffin* v. *Marquardt*, 17 N. Y. Rep. (3 Smith) 28 ; *Howe* v. *Julien*, 17 How. Pr. R. 338.

Roesler entered the store, and relet the basement and lofts at $3,200 per annum, leaving their rental $4,300 per annum, or by the quarter $1,075.

On the 18th day of August, 1854, Thompson & Roesler failed, and made a general assignment for the benefit of creditors, to the defendants. At the time of the assignment they had on hand in the store a large quantity of furs, which were part of the assigned property. The defendants took possession of the store, taking the keys from the assignors, put in a salesman, who sold some of the stock at retail, put up a bill, "selling out by order of assignees," and, on the 8th of September, sold a part of the goods on the premises by auction. An injunction having been served upon them, forbidding them from making any further disposition of the property, the auction was postponed before the goods were all sold; but, on the 20th of September, the injunction having been in the mean time removed, the remainder of the goods were sold at auction, and thereupon the defendants surrendered the premises to the plaintiffs.

Prior to this time, and shortly after the assignment, the defendants notified the plaintiffs that they did not intend to take the building, and would have nothing to do with the lease, and should get the goods out as soon as possible. The plaintiffs thereupon notified the under-tenants of Thompson & Roesler not to pay rent to any person but themselves, and on the 1st of November collected the rent of them, agreeing to hold them harmless against any other persons claiming the same.

This action was brought to recover rent of the defendants for the thirty-two days (from the 18th of August to the 20th of September) during which they occupied the store. The justice before whom the cause was tried gave judgment for the plaintiffs. On appeal to the general term of the Marine Court that judgment was reversed, and judgment was ordered for the defendants. The plaintiffs appealed to this court.

*J. D. and T. D. Sherwood*, for the appellants, contended that the defendants were liable for the rent as fixed by the lease.

I. As assignees of the lessees.

II. For use and occupation.

III. Under the clause in the assignment requiring them to pay, first, the charges of executing the trust.

To the first point they cited *Armstrong* v. *Wheeler*, 9 Cow. 88; *Provost* v. *Calder*, 2 Wendell, 517; *Williams* v. *Woodward*, ibid. 487; *Walter* v. *Curlys*, 14 ibid. 63; *Acker* v. *Witherill*, 4 Hill, 112; ·*Van Rensselaer* v. *Gallup*, 5 Denio, 454; *Van Rensselaer* v. *Bradley*, 3 ibid. 135; *Gravet* v. *Porter*, 11 Barb. S. C. R. 592; *Durand* v. *Wyman*, 2 Sandf. 597; *Moffat* v. *Smith*, 4 Com. 126; *Muir* v. *Glinsman*, Superior Court general term, January, 1856, Ms.; *Benson* v. *Bowles*, 8 Wend. 175; *Jackson* v. *Miller*, 6 ibid. 8; *Coles* v. *Marquand*, 2 Hill, 447; 4 Kent's Com., 96; Arch. Land. & Ten. 69, 70.

In support of the second proposition, they cited 4 Kent's Com. 96; Arch. Land. & Ten. 140; 1 Adol. & Ellis, N. S. 850.

*Hadley, Sterling and Thayer*, for the respondents.

I. Whether a lease is to be deemed property, so as to pass under a general assignment of the lessee's property for the benefit of creditors, depends upon the election of the assignees. *Martin* v. *Black*, 9 Paige R. 641; *Carter* v. *Hammell*, 12 Barb. S. C. R. 253.

II. The defendants are not liable, for by the terms of the lease no rent became due during their occupancy. *Child* v. *Clark*, 3 Barb. Ch. R. 52; *Armstrong* v. *Wheeler*, 9 Cow. R. 88.

III. The conduct of the plaintiffs, in forbidding Thompson & Roesler's tenants to pay rent to them or their assignees, and in subsequently collecting the rent from them, was an eviction, and would discharge the defendants, if otherwise liable.

IV. The defendants are not liable for use and occupation, for the reason that, at the time of their occupancy, the lease to Thompson & Roesler was still outstanding and unsurrendered.

DALY, J.—The law, in respect to the liability of the assignee of a lessee for rent reserved by the lease, is well settled. Where

Journeay v. Brackley.

a lease of land is made upon any condition, such as the payment of rent, the condition is annexed to the land, and goes with it, and the assignee of the lessee, if he accepts the assignment, takes the estate subject to the condition, and is liable for the payment of the rent, as long as he continues assignee. Thus, it is said, in Walker's case (3 Coke, 226, *b*), "if the lessee grant over all his interest, the lessor may have an action of debt against the assignee, with whom there was no contract by deed, forasmuch as the rent issues out of the land, the assignee who hath the land, and is privy in estate, is debtor in respect to the land." Where the assignee accepts the assignment, the privity of estate which existed between lessor and lessee is gone, and a privity of estate arises between the lessor and the assignee. *Copeland* v. *Stephens*, 1 Barn. & Ald. 598. A privity of estate is created by the demise between the lessor and lessee, that is, a mutuality of obligation and interest in connection with the estate, and though lessor and lessee should both assign, this privity continues between their respective assignees; as privity of estate always exists, as long as the term continues between the party who has the right to enjoy the estate, and the one entitled to the rent or to the performance of the conditions upon which it is to be enjoyed. In virtue of this privity, the assignee was always chargeable in an action of debt, at the suit of the lessor, for the rent which became due, while the privity of estate between them continued (Litt. §§ 460, 461; *Bark* v. *Dormer*, 1 Show, 187; 3 Mod. 337; *Glover* v. *Cope*, 4 ibid. 81; *Thursby* v. *Plant*, 1 Wm. Saund. 241, *a*, and note 5; Comyn Land. & Ten. 400; Archbold Land. & Ten. 70), or, if the demise was by deed, and it contained a covenant by the lessee to pay the rent, the lessor might, by the statute of 32 Henry VIII, c. 34, sue the assignee of the lessee upon the covenant, as it is a covenant running with the land. *Brett* v. *Cumberland*, Cro. Jac. 521; *Parker* v. *Webb*, 3 Salk. 5; *Palmer* v. *Edwards*, Doug. 187; *Walker* v. *Reeves*, ibid. 461; *Webb* v. *Russell*, 3 T. R. 400; *Walton* v. *Cronly*, 14 Wend. 64. With us, the distinction between debt and covenant no longer exists, but the ground of action is the general liability of the assignee, if he accepts the

assignment, and it is immaterial whether he enters upon the land or not. *Baker* v. *Gosling,* 4 Moore & Scott, 539. If the assignment is made to him and he accepts it, for a conveyance can be forced upon no man, his liability is fixed, and continues as long as the term or estate remains in him. This liability is at an end when he assigns to another, even though he assign to an irresponsible person, for the express purpose of getting rid of his liability, as was the case in *Lekeux* v. *Nash* (2 Str. 1221); but as long as he stands in the legal relation of assignee, the estate is in him, and he is bound to the lessor for the payment of rent, falling due after he became assignee, or which may become due while he stands in that relation. *Taylor* v. *Shum,* 1 Bos. & Pul. 1; *Paul* v. *Nurse,* 8 Barn. & Cres. 486; *Armstrong* v. *Wheeler,* 9 Cow. 90; *Harmen* v. *Edwards,* 18 Penn. 9; *Graves* v. *Port,* 11 Barb. 592.

But there is a distinction between an express or specific assignment by a lessee of all his interest in a lease, and a general assignment made by him of all his property for the benefit of creditors. In the first case, the assignee, by accepting the lease, creates a privity of estate between himself and the lessor, and having established that relation, it is immaterial whether he enters and enjoys the land or not; but in a general assignment for the benefit of creditors, the assignees may accept the assign ment, and enter upon the execution of the trust, but whether they will become assignees of a lease, held by the insolvent at the time of the assignment, is altogether at their election, and that election must be signified by some unequivocal act. It must be an act denoting an intention on their part to avail and possess themselves of the beneficial interest which the insolvent lessee had in the lease. Where a lease is expressly or specific ally assigned, the assignee, by accepting the assignment, indi cates his intention to accept the leasehold estate, with all the conditions to which it is subject. But in an assignment for the benefit of creditors, nothing more is indicated but the acceptance of a trust, to execute which, it may or may not be necessary for the assignee to possess himself of a leasehold interest exist-

ing in the insolvent assignor. The object of a general assignment, for the benefit of creditors, is, to transfer to the assignees all the property of the insolvent, which may be made available for the payment of his debts; and a term of years in land, burthened with the payment of rents, or the performance of other conditions, may be an interest of no value:—that would yield nothing for the purpose of the trust. To take it, and assume all the liabilities incident to its possession, might be to impose a charge upon the assigned estate, which, instead of being a benefit, might diminish the amount to which the creditors would otherwise be entitled. It is not to be presumed, therefore, that an assignee, for the benefit of creditors, takes, in his representative character, property of this description, and charges himself or the assigned estate with all the conditions attached to it, in consequence of becoming such assignee. Something more is required. The lease must either be specifically mentioned in the assignment, or, after accepting the trust, the assignee must have acted in such a way, in respect to the leasehold premises, as to show that he has elected to take the interest which the insolvent lessee had in them.

This distinction, between the liability of a specific assignee of a lease and an assignee for the benefit of creditors, appears to have been first pointed out by Lord Kenyon, in *Bourdillon* v. *Dalton*, 1 Espin. 234. "The assignees," he says, "certainly take this term under the assignment, but if it be what the civil law calls ' *damnosa hereditas*,' an interest producing nothing to the bankrupt's estate, they may abandon it." Afterwards, Lord Ellenborough, in *Turner* v. *Richardson* (7 East, 335), referred to this decision of Lord Kenyon, and said, that "the assignees of a bankrupt are not bound to take property of the bankrupt, which, so far from being valuable, would be a charge to the creditors, but they may make their election; if, however, they do elect to take the property, they cannot afterwards renounce it." But the point came up for more mature consideration in *Copeland* v. *Stephens* (1 Barn. & Ald. 594), and it was distinctly determined, that the general assignment of a bankrupt's personal estate, un-

der his commission, does not vest a term of years in the assignees, unless they do some act to manifest their assent to the assignment, as it regards the term and their acceptance of the estate. Three points were considered by Lord Ellenborough, in delivering the judgment of the court : *first,* whether the interest of the bankrupt, as lessee, passed immediately to the assignees, defeasible upon their actual refusal to accept it ; *secondly,* whether it passed immediately to them, defeasible upon their neglect or forbearance to do some act manifesting their acceptance ; or, *thirdly,* whether its effect was suspended until their acceptance. The two first propositions were answered in the negative, and it was held, that the estate remains in the bankrupt, until acceptance by the assignees, subject to their right to have the land by their acceptance of the assignment, and thereby to give effect to the deed, and vest the estate in themselves. The assignment in this case was under the bankrupt and insolvent debtor's act, and the assignees, like receivers, were officers of the court ; but it was held in *Carter* v. *Warne* (4 Car. & Pay. 191), and in *Pratt* v. *Leaven* (1 Miles [Penn.], 358), that there is no difference, in this respect, between assignees under a voluntary assignment by a debtor and assignees or trustees appointed under insolvent or bankrupt acts. The doctrine of *Copeland* v. *Stephens* and the law as above laid down have been recognized in numerous cases, and may now be regarded as firmly established. *Thomas* v. *Pemberton,* 7 Taun. 206 ; *Hastings* v. *Wilson,* 1 Holt, 290 ; *Page* v. *Godden,* 2 Starkie, 309 ; *Hill* v. *Dobie,* 8 Taun. 325 ; *Lindsey* v. *Limbert,* 2 Car. & Pay. 526 ; 12 Moore, 209 ; *Carter* v. *Warne,* 4 Car. & Pay. 191 ; *Clark* v. *Hume,* Ry. & Moo. 207 ; *Martin* v. *Black,* 9 Paige, 641 ; *Carter* v. *Hammett,* 12 Barb. 253 ; *Pratt* v. *Leaven,* 1 Miles, 358.

The same principle, in effect, has been recognized in the case of executors. Where they have no assets, they are not liable to the lessor, though they have taken possession of leasehold premises for the purpose of letting them, if the possession has been productive of no profit, and they have, after keeping it a reasonable time for that purpose, offered to surrender it to the

lessor. *Remnant* v. *Bainbridge*, 8 Taun. 191; *Wilkinson* v. *Canard*, 3 Anst. 909; *Reid* v. *Lord Tenderden*, Tyrwh. 118, 120; 2 Wms. on Execut. 1493, and has also been recognized in the case of receivers, *Martin* v. *Black*, 9 Paige, 641.

In *Carter* v. *Warne, supra*, and *Lindsey* v. *Limbert, supra*, it was held, that the assignees have a reasonable time to ascertain if the lease can be made available for the benefit of creditors or not, and during that time may take such steps as they may think necessary for the purpose of trying to make the property productive. They may offer the premises for sale (*Hasting* v. *Wilson*, and *Turner* v. *Richardson, supra*), or put an agent in possession for the purpose of letting them (*Lindsey* v. *Limbert*, 12 Moore, 209), or they may go themselves, or place persons temporarily upon the premises to take charge of the goods of the insolvent, and dispose of them there (*How* v. *Kennett*, 3 Adol. & Ellis, 659), and may even release an under-tenant, if, within a reasonable time, they notify the lessor that they do not intend to accept (*Hill* v. *Dobie, supra*), without assuming the character of assignees, or charging themselves or the assigned estate with the payment of rent.

But, assuming the management of a farm (*Thomas* v. *Pemberton, supra*), or selling the leasehold interest at auction and receiving a deposit on the sale, and then neglecting to enforce the contract against the purchaser (*Hastings* v. *Wilson, supra*), or executing an assignment of the lease to another (*Page* v. *Godden, supra*), or entering for the purpose of disposing of the insolvent's effects, and so using or occupying the premises as to diminish their value, and dealing with the premises as if they were their own (*Carter* v. *Warne, supra*), or carrying on the trade of the insolvent the same as before, for the benefit of creditors (*Clark* v. *Hume*), have been held to be acts showing an election to take the term and assume the legal relation of assignees of the lease.

I should not have felt it necessary to have gone so minutely into the examination of this question upon the authorities, but for a recent decision of the Superior Court (*Muir* v. *Glinsman*, Jan. General Term, 1856), in which an assignee for the benefit

of creditors, who went into possession of leasehold premises of
of the insolvent towards the end of a quarter, and remained in
possession for a few days after it terminated, was held responsi-
ble to the lessor, as assignee of the lease, for the whole quarter's
rent. That case differed from the present in two respects. The
assignee there was in possession when the quarter's rent fell due,
which was not the case here; and the action there appears to
have been an equitable action, for a decree that the assignee pay
the quarter's rent out of funds of the insolvent, adjudged to be
in his hands; whereas no such judgment was given here, nor
had the Marine Court the power to render such a judgment. It
may have been, moreover, that there were facts in that case
showing an election on the part of the assignee to accept the
lease, or, by the nature of the trust created, the assignee may
have been chargeable in equity for neglecting to apply assets in
his hands to the payment of the rent. But, from the opinion of
the court, which was delivered by Mr. Justice Hoffman, the de-
cision was not put upon any such ground; and the liability of
the defendant was deduced from the fact that he was an assignee
for the benefit of creditors. He was held, by virtue of that rela-
tion, to be in privity of estate with the lessor, and his neglect to
pay the rent was treated as a breach of the covenants contained
in the lease. The distinction between an express or specific
assignee of a lease and an assignee for the benefit of creditors was
not noticed, nor the numerous authorities establishing that dis-
tinction referred to or considered. It is obvious that Mr. Jus-
tice Hoffman did not consider that there was any difference, as
all the cases referred to by him, with one exception (*Morris* v.
*Parker*, 1 Ashmead, 187), in which this question was not before
the court or passed upon, are all cases relating to express or spe-
cific assignment of leases, disconnected with any trust or other
obligation on the part of the assignee, except that derived from
the acceptance of a direct assignment of a lease. If I understand
this case as determining that an assignee for the benefit of cred-
itors, is, by merely becoming such assignee, in privity of estate .
with the lessor of the insolvent lessee, and chargeable with the

performance of all covenants contained in the lease while he continues such assignee, then, with all possible respect for the eminent tribunal by which that judgment was rendered, I am constrained to say that it is in conflict with the uniform course of judicial decision in this country and in England. Such would certainly seem to be the opinion of Mr. Justice Hoffman; and, if the court agreed with him, I cannot concur in the correctness of the judgment.

In the case before us, the assignment to the defendants was made on the 18th of Aug., 1854, and on the evening of that day the keys of the store occupied by the insolvent were delivered to the assignees. Immediately after they took an inventory; the goods were got ready for auction; they dismissed the salesman, but continued to sell goods as customers came in, and a notice was posted up on the outside of the building, "Selling off by order of the assignees." On the 8th of September a portion of the goods were sent to auction. On the 9th of September an injunction was served upon the defendants, restraining them from selling the goods, which was dissolved on the 19th, and the day following, the residue of goods were sent to auction; and on the 23d, before the quarter's rent was due by the lease, the defendants vacated the premises. Soon after the assignment, and before the injunction, one of the defendants told one of the plaintiffs that they did not intend to take the building, and would have nothing to do with the lease; that they "would occupy the building no longer than they could help; would get the goods right out, and close the business as soon as possible;" and, before the quarter fell due, one of the plaintiffs told one of the under-tenants not to pay rent to Thompson & Roesler, the insolvent assignors; and the plaintiffs collected the quarter's rent when it fell due, on the 1st of Nov., from two of the under-tenants, and entered into an agreement, in writing, with each of them, to keep them in peaceable occupation until the first of May following, upon their paying their rent to the plaintiffs, and also to save them harmless against any one claiming rent from them.

There is nothing in this state of facts to show an election, on

the part of the defendants, to become assignees of the lease. In *Hill* v. *Dobie, supra,* the assignees did much more to signify their acceptance of the lease. They released an under-tenant from all liability under it, before notifying the lessors of their intention not to accept. It was contended that, by so doing, they had exercised dominion over the property; but having notified the lessors within a reasonable time, that is, a month after the assignment, that they did not accept, it was held that they were not liable as assignees. In *Wheeler* v. *Bramah* (3 Campb. 340) the assignees left the bankrupt's effects upon the premises nearly a year, and, for the purpose of preventing a distress, they paid the rent in arrear for three quarters, when it was agreed between them and the landlord that the lease should be put up at auction, to see if it was worth anything; the assignees declaring that, otherwise, it was not their intention to take the premises. The bankrupt's effects were sold at auction upon the premises, and at the same time the lease was put up, but there were no bidders; and it was held that the defendants had not made themselves assignees of the term. In *How* v. *Kennett* (3 Adol. & Ellis, 659) the assignees put in a shopman, who carried on the business, accounting to them for a week; the shop was shut, though the man slept at the house, for the purpose of taking care of the goods, for five or six weeks, when the property remaining on the premises was sold at auction, by the order of the assignees; and it was held that the entry of the assignees was merely for the purpose of selling the insolvent's goods, and was not such a possession as would constitute a tenancy, and render them liable to the landlord in an action for use and occupation.

*Pratt* v. *Leaven* (1 Miles [Penn.], 358) was a case more nearly resembling the one under consideration. There the assignees, under a voluntary assignment for the benefit of creditors, containing no notice of the lease, took possession of the goods in a store, which, as in this case, was part of the demised premises, the key of which they took. They took an inventory of the goods, and, eleven days after the assignment, when the quarter's rent was more than half expired, they made a public sale of the goods

Journeay v. Brackley.

upon the premises. About a month after, on the day when the quarter's rent fell due, they paid the rent of that quarter to the lessor, and tendered him the key, which he refused to accept. He brought an action against them for the rent subsequently accruing; but the defendants had judgment, the court being of opinion that they were not liable as assignees of the lease. The delivery of the key was regarded as a mere symbol of the possession, and a giving of the control of the goods in the store only. The court said that the taking of the inventory and the public sale of the goods on the premises were not an entering into the premises demised, so as to bind the defendants as assignees of the lease; and that, as the payment of the quarter's rent was accompanied with a tender of the key, and a statement on the part of the assignees that they had made no other use of the premises than to make a public sale of the goods, it could not be deemed as an implied election to take the lease under the assignment; nor could the assignees in any way be held responsible for any rent which accrued subsequently.

Upon these authorities, I think it is very clear that the defendants did nothing to show that it was their intention to become assignees of the lease. Their entry upon the premises was for the temporary purpose of disposing of the insolvent's effects, and they did so in an expeditious and summary manner. They notified the plaintiffs, within twenty days after the assignment, that they would have nothing to do with the lease, and informed them for what purpose they had gone upon the premises; and that the plaintiffs did not regard or treat them as assignees of the lease, or as having succeeded to the rights and interests of the lessees, is evident from their notifying the under-tenants not to pay rent to the lessees, collecting rent from the under-tenants, and entering into the agreement to save them harmless. I can see nothing in the defendants' acts to charge them as assignees of the lease, or to make them responsible for the performance of the covenants contained in it. It has been held that where one, not the lessee, is in possession of leasehold premises, it will be presumed that he is in as assignee of the original tenant. *Du-*

*rand* v. *Wyman*, 2 Sandf. S. C. 598.   If the defendants could be
regarded in possession at all, which I very much doubt, as the
lessees continued in the store as long as the defendants were
there, assisting in getting the goods ready for auction, this pre-
sumption, like every other, would be overcome, when it was
shown for what purpose they went into possession.   It was held,
in *Williams* v. *Woodward* (2 Wend. 487), that the party in pos-
session may overcome the legal presumption, by showing that
he is not assignee ; and the rule is thus carefully stated in *Acker*
v. *Witherill* (6 Hill, 112) :  " Where a man is shown to be in pos-
session of leasehold premises, *without anything more*, the pre-
sumption of law will be that he is in as assignee of the original
tenant."

In the present case, the judgment was given for the time that
the defendants were adjudged to be in actual occupation, that
is, from the 18th of Aug. to the 23d of September, at the rate of
the rent reserved by the lease ; and it remains but to consider
whether, if the defendants were not assignees of the lease, they
were liable to the plaintiffs for use and occupation for the time
they were adjudged to be in possession of the store.

I confess I do not see how it is possible for the plaintiffs to
sustain an action against the defendants for use and occupation.
If they were not assignees of the lease, then, according to the
ruling ( *Copeland* v. *Stephens*, 1 Barn. & Ald., *supra*), the lease-
hold estate remained in Thompson & Roesler, the insolvent les-
sees.   The privity of estate had never been changed.   Thomp-
son & Roesler were in legal possession, under a valid subsisting
lease, whether they were in actual occupancy or not being imma-
terial ; though, in my judgment, they were quite as much so as the
defendants.   If the defendants occupied, they could only do so
rightfully by the permission and authority of the lessees.   The
lessors could give them no such authority ; they had reserved
the right, by the lease, to enter and relet as the agents of the les-
sees, if the premises should become vacant during the term ; but
they did not become vacant until the 23d of September, when
both the lessees and the defendants left the store.   The action

for use and occupation, whether in debt or in assumpsit, is maintainable only where there is a contract between the parties, express or implied. *Birch* v. *Wright*, 1 T. R. 378. "An implied contract," in the language of Lord Denman, in *Gibson* v. *Kirk* (1 Ad. & El. N. S. 850), "is raised by law from the fact that land belonging to the plaintiff has been occupied by the defendant with the plaintiff's permission." The plaintiffs here could enter into no contract with the defendants for the occupation of the premises, and therefore no such contract could be implied. It is essential, in any action for use and occupation, that the relation of landlord and tenant should exist. *McKean* v. *Whitney*, 3 Denio, 455. If the defendants had become the assignees of the lease, that relation would exist between them and the plaintiffs (Arch. Land. & Ten. 69); but it could not exist while the term still vested in the lessees, Thompson & Roesler. There is an end to all presumption of an implied contract between the actual occupant and the owner, or of the relation between them of landlord and tenant, the moment a lease of the premises from the owner to a third party is shown to be outstanding. Unless the actual occupant is the assignee under that lease, or can be presumed to be, there is no privity, either of estate or of contract, to support an action against him by the owner for rent.

The general term of the court below, therefore, were right in holding that this judgment could not be sustained; but they erred in giving judgment for the defendants. They should have reversed the judgment and ordered a new trial; for the plaintiff might show, upon a new trial, acts of the defendants amounting to an acceptance of the lease. On the trial, he was not required to go any further, as the court gave him judgment upon the case he made out. The case, therefore, must go back to the general term, that they may give the proper judgment.

Ordered accordingly.