# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

———◆———

## JERMAIN vs. PATTISON and GOULD.

Where the assignees of a lessee leased the premises for the best price they could obtain, and paid to the landlord all that they received, which was accepted by him, and they surrendered the possession; *Held*, that the assignees, having fully administered and paid out according to the terms of the assignment all the moneys they had received from the assigned estate could, at most, only be charged *personally* with the value of the use and occupation of the premises; and that evidence to determine that value should have been received. PECKHAM, J. dissented.

The liability of assignees under an assignment for the benefit of creditors, is to be determined by the same rule which applies to executors, under similar circumstances, *it seems*.

| 46b | 9 |
|-----|---|
| 72 AD ¹ 66 | |

THIS is an appeal from a judgment entered upon the decision of a justice of this court, before whom the action was tried without a jury at the Albany circuit, April, 1857. The action was brought to recover rent due upon a lease, and

judgment was entered in favor of the plaintiff for $4101.80 damages and costs.   The Manufacturers and Farmers' Bank of the city of Albany, on the 2d day of March, 1844, leased to James H. Hooker certain premises situated in Whitehall, in the county of Washington, for the term of five years, at the annual rent of $2000, with a privilege to the lessee that the said lease should be continued for an additional term not exceeding five years, if he desired the same renewed.   The lease was, at the request of the said Hooker, renewed.   It was on the 5th of April, 1844, assigned to the plaintiff. James H. Hooker made a voluntary assignment for the ben- · efit of creditors, on the 25th day of December, 1851, to the defendants.   The defendants, after making an ineffectual effort to sell the unexpired term, leased the premises to Oliver Bascom and his partners, for one year, at the rent of $1000. The defendants offered to prove, upon the trial, that James H. Hooker died on the 28th of December, 1851.   And that the defendants before letting the premises to Bascom and his part- ners offered the unexpired term for sale or letting, but received no offer for the same, except from Bascom and his partners. *That $1000 was all said premises were worth for the use and occupation from 1st March,* 1852, *to 1st March,* 1853.   The defendants further offered to prove that on or about the 1st of March, 1853, the defendants verbally notified the plaintiff that they had, after a full trial, become satisfied it was not for the interest of those concerned in the assignment, under which the defendants held the property, that they should take and hold the unexpired term in the property in question, and therefore they gave up and surrendered all claim to the same from and after the said 1st of March, 1853.   The defendants further offered to prove that on the 1st of September, 1852, they paid the plaintiff $1000, and then informed him that said sum had been received from Bascom and partners for the use of the property from 1st of March, 1852, to 1st of March, 1853 ; and that Bascom and partners had applied to the defendants for leave to occupy the property for a second year,

Jermain *v.* Pattison.

which the defendants had refused and had referred said Bas-
com to the plaintiff as the person to be dealt with. The
defendants further offered to prove that since March 1, 1853,
the defendants, in no manner claimed, occupied or possessed
the demised premises, nor in any way interfered therewith,
which the plaintiff understood and knew. *The defendants
further offered to prove that* $1000 *for the use and occupa-
tion per year of the premises mentioned in the complaint,
was and is the full value of such use and occupation* per
year from the date of said deed of assignment from Hooker
and others to the defendants to the end and termination of
said demise, stated in the complaint. The defendants further
offered to prove *that they had fully administered and paid
out, (according to the terms, preferences and classes con-
tained in said deed of assignment,) all the moneys they had
thus far received* from the property and effects assigned, in
satisfaction of the first three classes of debts set forth in said
assignment, and that they have not now, nor have they ever
had any money or effects under said assignment, applicable
to the fourth class of debts mentioned therein. The court
rejected the evidence offered, and the defendants excepted to
the decision.

*George Gould,* for the appellants.

*Clark B. Cochrane,* for the respondent.

INGALLS, J. In considering this appeal we must regard
the evidence offered as though it were in the case. The ques-
tion then presented is, whether the evidence offered should
have been received—and that mainly depends upon the legal
proposition whether, under the circumstances, the defendants
*rendered themselves personally* liable for the rent secured by
the lease in consequence of leasing the said premises to Bas-
com and his partners. All the interest which the defendants
acquired in the premises was derived from the assignment,

Jermain *v.* Pattison.

and they occupied the attitude of trustees. After an ineffectual attempt to otherwise dispose of the term, they leased the premises for one year for $1000, which was the best price they *could obtain, and the full value of the use of the said premises,* which sum they paid to the plaintiff, who received the same, and at the time of such payment they informed the plaintiff, that it was the rent received for one year from said Bascom and his partners, and the defendants surrendered the premises to the plaintiff from the 1st of March, 1853. The defendants distributed under the assignment all the funds received from the trust, and whatever they paid beyond the $1000 would be from their own property. The assignment was executed on the 25th of December, 1851, and the premises were leased to Bascom and his partners on the 1st of March, 1852, and the notice to the plaintiff that the defendants surrendered the premises was given September, 1852. That notice was not required to be in writing. (*Remnant* v. *Bremridge,* 8 *Taunt.* 191.)

I do not perceive why, upon principle, the liability of the defendants is not to be determined by the same rule which applies to executors under similar circumstances. (*Journaey* v. *Brackley,* 1 *Hilt.* 457. *Martin* v. *Black,* 9 *Paige,* 644.)

In *Williams on Executors,* (5 *Am. ed. vol.* 2, *p.* 1585,) the author says : " With respect to the liability of the executor of the lessee to an action of debt for rent accrued after the death of the testator, it is fully established that the executor will be liable as long as the lease continues, *and as far as he has assets.*" (*Page* 1589.) " Where the executor, *having entered,* is sued in the *debet* or *detinet as assignee, for rent incurred after his entry,* he can not plead *plene administravit,* even although he be named executor in the declaration ; for if the rent be of less value than the land (as the law *prima facie* supposes,) so much of the profits as suffices to make up the rent is appropriated to the lessor, and can not be applied to any thing else, and therefore the plea of *plene administravit* confesses a misapplication, since no

Jermain *v.* Pattison.

other payment out of the profits can be justified till the rent is answered. And if judgment be given against the executors it is· *de bonis propriis.* But if the land be of less value than the rent, the executor may plead the special matter, viz. *that he has no assets, and that the land is of less value than the rent,* and pray judgment whether he shall be charged otherwise than in the *detinet* only, for more than the actual profits." The same doctrine, in nearly the same language, is asserted in *Toller on Executors*, (3d ed. p. 279. *See also* 1 *Saund.* 1, *n.* 1; *also p.* 111, *n. c; Buckley* v. *Pick*, 1 *Salk.* 317; *Remnant* v. *Bremridge*, 8 *Taunt.* 191.) The rule seems well established in England that where an executor does not enter and thereby become chargeable as assignee, he is only answerable in his character as executor to the extent of the assets in his hands applicable to the payment of such rent. But where *he enters, he then becomes personally liable to the extent of the rents and profits of the land.* And beyond that he is only liable, as executor, so far as he has assets.

In *Taylor's Landlord and Tenant*, § 461, the author says: "But if he underlets, the occupation of the under ·tenant is his occupation, and he is liable as assignee of the lease. After entry he may be charged for a breach, either in his representative character or as assignee. If declared against as assignee, he is chargeable as a tenant in actual possession, and the judgment is *de bonis propriis. But in no case is he chargeable beyond the value of the land."*

The respondent's counsel cites the case of *Martin* v. *Black*, (9 *Paige*, 641.) In that case the only question directly mooted was, whether goods removed from the demised premises by a receiver were subject to distress for rent. And it was held that they were not. The Chancellor then proceeded to discuss what might have been the result if the real estate had been conveyed to the receiver and he had taken possession thereof. While he holds that in the latter event, the *receiver, like an executor or assignee of an insolvent,* would

be liable, yet he does not declare that such liability would extend to the whole rent reserved, by the lease, when the profits received by the trustee were less than the rent claimed. That question is not discussed, and hence the case can not be considered in conflict with the authorities above cited. Nor do I think the cases, *Journeay* v. *Brackley*, (1 *Hilton*, 447 ;) *Bagley* v. *Freeman*, (*Id.* 196,) support the plaintiff's theory of this case. In *Journeay* v. *Brackley*, at page 454, Daly, J. says: "The same principle, in effect, has been recognized in the case of executors. *When they have no assets*, they are not liable to the lessor, though they have taken possession of the leasehold premises, for the purpose of letting them, *if the possession has been productive of no profit*, and they have, after keeping it a reasonable time for that purpose, offered to surrender it to the lessor." What that reasonable time would be, is not defined by the case, but it is left, as it must necssarily be, to the circumstances of each particular case, to be determined from the evidence, *which is admissible and should be received so far us it bears upon that question; for to that extent, at least, it is material.*

In the case above cited, (*Remnant* v. *Bremridge*,) the administrator took possession of the premises and occupied them eight months, and then verbally offered to surrender them to the landlord. The court held the administrator was not liable, it being proved upon the trial, that he had derived no benefit from the premises.

In the matter of *John Galloway*, (21 *Wend.* 32,) which was an action against the defendant, who was an executor, to charge him personally for rent; on the ground that he had entered upon the premises, Cowen, J. remarks: "But it is also well settled that when rent or money for breach of covenant falls due after the death of the testator or intestate and the executor or administrator enters, or, which is the same thing, *receives the rents and profits*, he is chargeable in the *debet* or directly on the covenant as an assignee, and need not be named as executor or administrator. In certain special

Jermain *v.* Pattison.

cases he may, it is true, defend in part, *as when he has no assets, and the land is in truth worth less than the sum due.* But this is strictly matter of defense; *prima facie* the land is worth more. The authorities are not all one way, and most of them may be seen collected in 2 *Williams' Ex.* 1076, 7, (*Phil. ed.* 1832,) where the doctrine is fully stated." The last case seems to bear directly upon the one at bar, and favors the admissibility of the evidence offered, particularly in regard to the value of the use and occupation of the demised premises, and as to the amount of assets. It is in harmony with the doctrine contained in the English cases. Again, a portion of the evidence offered was material in determining whether the offer to surrender the premises was made within a reasonable time under the circumstances. That was a question to be determined by the court, upon all the evidence bearing thereon when admitted. It does not follow that material evidence is to be excluded because possibly it may fail to support the proposition sought to be established thereby. It appears by the evidence received and that offered, that when the $1000 was paid to the plaintiff, accompanied with an explanation that it was the rent for one year, and also accompanied with an offer to surrender, the plaintiff received the same without objection, and without any declaration on his part that he accepted the said sum as part payment only of the rent specified in the lease. This is not the case of parties who have voluntarily purchased on their own account a lease of premises and taken possession thereof, or leased the same to other parties for profit. Here the defendants were merely trustees, and assumed to act in no other character. They leased the premises for the best price they could obtain, and promptly paid to the plaintiff all that they received, which was accepted by him. If the plaintiff had been dissatisfied he could have re-entered and thereby acquired possession of the premises. Upon the evidence received and offered, the defendants, in my judgment, could at most only be charged *personally*

with the value of the use of the said premises ; and the evidence to determine that value should have been received. Where trustees act in good faith the. law extends to them reasonable protection, and regards their acts with liberality ; and I observe no · reason why that protection should not be extended to these defendants ; I therefore conclude that the learned justice erred in excluding the evidence offered by the defendants, and for that reason the judgment must be reversed, and a new trial had, with costs to abide the event.

MILLER, J. concurred.

PECKHAM, J. dissented.

Judgment reversed.

