## RICHARD H. DOCKRILL
## v.
## GEORGE SCHENK.

*Forcible Detainer—Lease—Conditions—Assessments—Non-payment of by Tenant—Rent.*

1.  A notice to a tenant by a landlord touching the termination of the tenancy, the same recognizing the existence of a lease, amounts to a waiver of a former notice to the same end.

2.  A tenant bound under his lease to pay assessments, it being likewise provided that in case of neglect on his part in this regard the landlord might pay the same, and that the amount should be deemed collectable as rent, can not be presumed to know of assessments, or of their payment by the landlord, and he is not guilty of the breach of his covenant in this respect until he has received notice of the landlord's payment thereof.

3.  In an action of forcible detainer brought to recover possession of a parcel of tillage land, this court holds that the notice to quit involved was premature, notice of the payment of a certain assessment not having been given by the plaintiff to the defendant, and declines to interfere with the judgment for the defendant.

### [Opinion filed June 2, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Mr. FRANK J. CRAWFORD, for appellant.

Messrs. MOSES, NEWMAN & PAM and MOSES SOLOMON, for appellee.

GARNETT, J.   In this action of forcible detainer, appellant sought to recover possession of a parcel of land of about seven acres, held by appellee under a lease from appellant to John Davis, lessee. The lease was under seal, dated December 1, 1883; was for a term of five years from that date, at a rental of $75 per annum, payable annually, and the term was, by consent of appellant, on February 4, 1884, duly assigned to appellee. The lease required that the land should be culti-

vated as a garden, and that it should not be used for any other purpose. It also contained among others, these provisions :

"It is mutually agreed that if the said R. H. Dockrill shall sell at any time during this lease, all or any part of said seven and one-half acres, then this lease, at the option of the said R. H. Dockrill, or the purchaser, so far as the portion sold is concerned, is to be terminated and canceled, and the party of the second part will, upon or after sixty days' notice of such sale, give full, quiet and peaceable possession of the portion sold. In case such possession is required and obtained before October 1st, in any year, then a *pro rata* part of the $75 paid for that year (that is, a part equal *pro rata* to the portion sold) is to be refunded to the party of the second part. In case said Dockrill desires at any time to subdivide said premises, he is to have then, also, the option or privilege of canceling and terminating this lease. It is further covenanted and agreed by the said party of the second part, that he will pay or cause to be paid, all water rates, and all taxes and assessments that may be laid, charged or assessed on said demised premises, pending the existence of this lease, or if at any time after any tax, assessment or water rate shall have become due or payable, the party of the second part, or his legal representative, shall neglect to pay such water rates, tax or assessment, it may be lawful for the party of the first part to pay the same at any time thereafter, and the amount of any and all such payments so made by the party of the first part shall be deemed as taken, and are hereby declared to be so much additional and further rent for the above demised premises, due from and payable by the party of the second part, and may be collected in the same manner, by distress or otherwise, as is hereinafter provided for the collection of other rents to grow due thereon.   *   *   *

"It is further agreed by the party of the second part, that neither he nor his legal representatives, will underlet said premises, or any part thereof, or assign this lease without the written assent of said party of the first part, first had and obtained thereto.

"It is expressly understood and agreed by and between the

parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon it ought to be paid, as aforesaid, or if any default shall be made in any of the covenants herein contained, to be kept by the party of the second part, his executors, administrators, agents, attorney or assigns, it shall be, or may be lawful for the party of the first part, or his heirs, executors, administrators, agents, attorney or assigns, at his election, to declare said term ended, and into the said demised premises, or any part thereof, either with or without process of law, to re-enter, et c., ✳ ✳ ✳ and if he shall remain in possession of the same one day after notice of such default, or after the termination of this lease, in any of the ways above named, he shall be deemed guilty of a forcible detainer of the premises under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcible or otherwise, with or without process of law, as above stated."

"And the said party of the second part hereby waives his right to any notice from said party of the first part, of his election to declare this lease at an end, under any of its provisions, or any demand for the payment of rent, or the possession of premises leased therein; but the simple fact of the non-payment of the rent reserved shall constitute a forcible detainer as aforesaid. ✳ ✳ ✳

" It is further understood and agreed that all the conditions and covenants contained in this lease shall be binding upon the heirs, executors, administrators and assigns of the parties to these presents, respectively."

During the years 1885 to 1888, appellant paid the sum of $855 of taxes and special assessments, which were levied upon the premises for the years 1884 to 1887. The last of such payments was made April 20, 1888. Appellee never knew or was notified of any of those payments by appellant, and never paid to him any part thereof. On May 1, 1888, appellant caused written notice to be served on appellee that in consequence of his subletting a part of the premises to one Campbell, who was then occupying the same as a residence,

he had elected to determine the lease, and appellee was notified to deliver possession to appellant within ten days of that dates It was also stated in the notice that appellant "now desires to subdivide said premises." The $75 rent for the year beginning December 1, 1887, was duly tendered to appellee.

On July 6, 1888, appellant caused to be served upon appellee a notice in writing as follows:

"To George Schenk: You are hereby notified, that there is now due me the sum of $855, being rent for premises situated in Cook county, in the State of Illinois, and known and described as follows, viz.: 7 16-100 acres north and adjoining south 7 16-100 acres of the east half of the southeast quarter of the southwest $\frac{1}{4}$ of section 17, township 38 north, range 14, east of the 3d P. M., described in your lease as the 7$\frac{1}{2}$ acres, more or less, in the east half of the southeast quarter of the southwest $\frac{1}{4}$ section 17, township 38 north, range 14, east of the 3d P. M.

"And you are further notified that payment of said sum so due, has been and is hereby demanded of you, and that unless payment thereof is made on or before the 12th day of July, A. D. 1888, your lease of said premises will be terminated.

"Dated this 6th day of July, A. D. 1888.

"RICHARD H. DOCKRILL,

"Landlord."

Appellant himself served that notice by delivering a copy of it to appellee's wife. He had no statement of the taxes and assessments with him at the time, but told Mrs. Schenk that it was a notice to quit for not having paid the rent, and said nothing to her about taxes or assessments. The court instructed the jury to find a verdict for the defendant.

Comment on the notice of May 1, 1888, or the causes set forth therein for terminating the lease, is not necessary, as the notice of July 6th recognized the existence of the lease at that time, and was clearly a waiver of the former notice.

Non-payment of the taxes and assessments by appellee was a fact within his own knowledge, and for that non-payment alone appellant might, at his election, have declared the term ended, but he was not obliged to do so. The lease gave him

the right to pay the taxes and assessments and treat the payments as so much additional rent. He chose the latter alternative.

Whatever may be said as to the regularity and certainty of taxes and the possible duty of appellee to keep himself informed of their levy and payment, when he has entered into an obligation of this character, no such considerations apply to special assessments. They are wholly uncertain and can not be anticipated. Appellee could not, by any reasonable rule, be required to know of them, or of their payment by appellant. These facts were peculiarly within the knowledge of appellant, and the law does not charge appellee with breach of his covenant in that respect until he has notice of appellant's payment of the assessments. Vyse v. Wakefield, 6 Mees. & W. 442; 1 Chit. Pl., 337 (16 Am. Ed.); 2 Am. Lead. Cases, 65–70 (5 Ed.).

In the $855 named in the notice was included a special assessment of $482.89. As to that amount, at least, there was no breach of appellee's covenant, and therefore the notice to quit was premature. Proof of notice given before July 6, 1888, of that payment by appellant, was essential to his right of action, and as no evidence of such notice was given, the court was justified in the instruction to find for the defendant.

The judgment is affirmed.

*Judgment affirmed.*