Timothy P. Paddell, Plaintiff, v. Elisha Harris Janes et al., Defendants.

(Supreme Court, New York Special Term, January, 1914.)

Lease — covenant not to assign — forfeiture — assignment for creditors made by lessee — distinction between such assignment and ordinary assignment of lease — notice to terminate lease — waiver of breach of covenant to assign — option to purchase — sufficiency of tender.

Where a lease provides for a forfeiture thereof for a breach of any covenant, a lessee's covenant not to assign must be strictly construed against the lessor and liberally in favor of the lessee.

To justify a forfeiture for breach of the lessee's covenant not to assign, it must clearly appear that his act would give his

assignee the right to the whole term and estate of the lessee, irrespective of the wishes of the lessor.

An assignment of a lease, as commonly understood, means an absolute transfer of the whole term and estate of the lessee to a stranger to the lease; and the assignee assumes fixed liabilities as by contract, whether he enters on the premises or not.

While a lessee is liable by privity of estate and contract, his assignee is liable only by privity of estate.

An assignment of a lease creates no new estate but simply transfers an existing estate to a third person, while a lease or sublease creates a new estate.

An assignment for creditors is not a breach of a lessee's covenant not to assign his lease.

One of the chief requisites of an assignment for creditors is that the assignor shall place all his property in possession of the assignee, and, unless the statutes regulating assignments for creditors are complied with, there can be no valid assignment.

There is no contractual relation between one making a general assignment for creditors and the assignee who takes by appointment and not by way of contract.

While an assignee for creditors may use all of the assigned property to pay creditors of the assignor, there is a reversion in favor of the assignor in any property left after the execution of the trust imposed whether such reversion be reserved in the assignment or not.

Any limitation provided by the statute regulating the making of general assignments for creditors is deemed to be incorporated therein.

An assignee for creditors is merely the representative of the assignor in the payment of debts and is accountable to him for all property not used for that purpose; and the assignee takes the property subject to equities of third parties.

If an assignee for creditors accepts a lease under which his assignor was a tenant, he becomes liable thereunder by privity of estate, not by privity of contract.

A lessor, upon giving notice of an election to terminate the lease and the commencement of an action of ejectment against the lessee, terminates the lease so far as he is able; but the parties may waive any breach of covenant on the part of the lessee and reinstate and continue the lease.

While the issuance of a warrant in summary proceedings breaks the lease, the acceptance of rent thereafter operates as a

waiver of the lessor's right to consider the lease abrogated and so does also acceptance of rent after a forfeiture.

Where, after the service of a notice of election to terminate the lease and the commencement in 1910 of an action in ejectment on the ground of forfeiture of the lease because the lessee had made an assignment for creditors, the lessor made a sworn statement that the lessee was still the lessee and was indebted for rent and accepted rent for six months after the final disposition of a second summary proceeding in 1911 and continued to acknowledge the relation of landlord and tenant by the acceptance of rent after the service of notice by the lessee in April, 1912, of his intention to exercise an option to purchase the premises, there was an absolute waiver of any forfeiture or of any right which accrued to the lessor by reason of the service of the notice to terminate the lease and the commencement of the ejectment suit.

The lessee upon exercising his option to purchase was not obligated to make a second tender of the rents which the lessor had previously refused, in order to entitle him to a conveyance, though on the closing of the title the amount of unpaid rent, without interest, must be paid subject to any proper offset.

ACTION for specific performance found upon a covenant in a lease.

E. V. Abbott, for plaintiff.

F. L. C. Keating (W. M. K. Olcott, of counsel), for defendants.

DAVIS, J. This is an action for specific performance founded upon a covenant in a lease which gives the tenant, who is the plaintiff here, an option to purchase the demised premises for $60,000. By an instrument made the 17th day of May, 1901, Jane M. Janes, now deceased, leased to plaintiff certain premises in the city of New York on the southerly side of Forty-second street, distant about eighty feet westerly from Seventh avenue, and known as No. 208 West Forty-

second street, for the term of twenty-one years, commencing on the 1st day of May, 1901, and ending on the 13th day of April, 1922, at an annual rental of $2,400 per annum for the first five years, $3,000 per year for the next six years and $3,300 per year for the remaining six years of said term, payable in equal monthly installments in advance on the first day of each and every month of said term. The lease contained a covenant that the lessee would not at any time or times thereafter assign, transfer or set over said lease to any person or persons whomsoever without the assent of the lessor in writing under her seal first had and obtained. It was also provided in said lease that the lessee should have the privilege and option at any time after May 1, 1911, and prior to February 1, 1922, to purchase the said leased premises upon payment of the sum of $60,000, three months' written notice to exercise such option to be given to the lessor and payment to be made not later than one month after the service of the notice, upon which payment the said lease should cease and determine; provided, however, that at the time of the exercise of such option the lessee should have duly kept all the terms, covenants and conditions on his part to be kept and performed as provided in the lease. It was also provided that if any default be made in the payment of the rent or in the performance of any of the covenants or conditions in the lease contained on the part of the lessee to be kept and performed by him, then the said hiring and the relation of landlord and tenant, at the option of said lessor, should wholly cease and determine, and the said lessor could re-enter the said premises. It was also further provided that the receipt of any rent, whether the same be that originally reserved or be that termed additional, future or contingent rent, or of any portion of any rent of any

kind, should not be deemed to operate as a waiver of the right of the lessor to enforce the payment of any rent of any kind already due or to the forfeiture of such lease by such remedy as may be appropriate, and also that a waiver by the said lessor to enforce any covenant by reason of the breach by said lessee should not be deemed to avoid the right of the lessor to enforce such covenant or condition on the occasion of a subsequent breach or default. The plaintiff entered into possession of the premises and continued to occupy the same and paid the rent up to November 23, 1908, when he made a general assignment for the benefit of creditors to Boudinot Keith. The deed of assignment purported to convey all the property of the plaintiff, both real and personal, but this leasehold property is not specifically mentioned. Keith, the assignee, accepted the deed of assignment and went into possession of the leasehold premises, though the plaintiff continued to occupy the premises. On the first of the month next following the date of the assignment Keith, the assignee, paid the rent by a check signed Boudinot Keith, trustee. He continued to pay the rent in this manner up to and including May, 1909. About May 17, 1909, a composition was arranged with the creditors by which the plaintiff gave composition notes to his creditors and Keith conveyed to Buschsbaum & Bishop the properties that had been transferred to him as assignee. The lease was included in such deed. At the same time Buschsbaum & Bishop made a declaration of trust that they held the said deed as trustee to secure the plaintiff's creditors, and also at the same time Buschsbaum & Bishop executed a deed of such properties to the plaintiff and delivered it to the West Side Bank, which bank executed an escrow agreement for the holding of said deed, the same to be delivered to plaintiff upon certain condi-

tions, one of which was the payment of the composition notes in full on or before June 1, 1914. The plaintiff had complied with the terms of the escrow agreement up to the time of the trial. After May, 1909, Keith, the assignee, ceased paying the rent, and such rent for the months of June, July and August, 1909, was paid by the checks of plaintiff. During the month of August, 1909, Mrs. Janes, the lessor, claimed for the first time to have had knowledge of the assignment from plaintiff to Keith and from Keith to Buschsbaum & Bishop, though it is admitted that the checks signed by the trustee in the manner as aforesaid had been received by her. She claimed, however, that she thought the word "trustee" related to some troubles of the plaintiff with other property which was at that time under foreclosure. When the check for the month of September, 1909, rent was tendered by the plaintiff it was returned, and on September 2, 1909, the lessor commenced summary proceedings to dispossess the plaintiff on the ground that the said assignment of plaintiff for the benefit of creditors and the said assignment to Buschsbaum & Bishop, each having been made without her consent, were a violation of the covenant against assignment of the lease. This proceeding resulted in a final order in favor of this plaintiff, the lessee, which was affirmed on appeal in May, 1910. This proceeding was disposed of in favor of the plaintiff for the reason that under the terms of the lease a breach by the plaintiff created not a conditional limitation of the lease for which summary proceedings would lie, but merely a condition giving to the landlord upon her election the right to enforce forfeiture by ejectment. See *Janes* v. *Paddell*, 67 Misc. Rep. 420. On September 1, 1909, and October 1, 1909, the plaintiff tendered to the lessor the rent for the months of September and October, 1909, re-

spectively, but the lessor refused to receive it on the ground that she had already been paid the rent. After the termination of the summary proceedings, and in 1910, the lessor commenced an action in ejectment against the plaintiff on the ground that the plaintiff had violated the covenants of the lease by reason of the assignments heretofore mentioned, previous notice having been served upon plaintiff of the lessor's election to terminate the lease upon these grounds. The latter action is now pending and undetermined. In June, 1911, the lessor commenced another summary proceeding against the plaintiff. This proceeding was based upon the ground that the plaintiff was the tenant of the landlord and that he had failed to pay the rent for the months of October, November and December, 1909, and for the entire year of 1910 and for the months of January, February, March, April, May and June, 1911, the said rent having been demanded from said tenant and a default made in the payment thereof. The plaintiff answered in that proceeding, admitting that he was the tenant, and alleged that he had paid or offered to pay the rent due as alleged in said petition and had performed all the covenants and agreements on his part, and also sets up the pendency of the said ejectment suit. This proceeding resulted in a determination in favor of the lessor, which determination was reversed and the proceeding dismissed by the Appellate Term on December 15, 1911. See *Janes* v. *Paddell,* 74 Misc. Rep. 409. The plaintiff from September, 1909, to February, 1912, inclusive, on the first day of each and every month, tendered the amount of the rent, which was refused by Mrs. Janes. During all the time, including the trust period, plaintiff was in possession of and managing the property and exercising practically the rights of a tenant in regard thereto, and after the composition agreement

plaintiff took possession in his own name, making re-
pairs, subleasing the premises, collecting rents, pay-
ing taxes, etc., and at the time of the trial was in
possession of and occupying the premises. After the
determination by the Appellate Term in the second
summary proceeding the lessor accepted rent from
plaintiff for the months of March to July, 1912, in-
clusive. On April 9, 1912, this plaintiff gave a writ-
ten notice to the lessor that he had exercised the
option to purchase the said premises in the manner
provided by the terms of the lease, and thereafter,
and on May 9 and July 9, 1912, tendered the said
purchase price of $60,000 to the said lessor. No rent
has been paid since July, 1912. On August 29, 1913,
the lessor died, leaving a last will and testament, in
which she named as her executrix Martha Ridgeway
Wood, her daughter, and as her executor Elisha Harris
Janes, her son. The lessor having failed to comply
with this notice and to accept the tender and transfer
the property, this action was commenced against her
executrix and executor and against the heirs of the
lessor to compel specific performance of the covenant.
to convey the property. The defendants have set up
two defenses; *first,* that the plaintiff has failed,
neglected and refused to pay the installments of the
rent due for the months of September, 1909, to Febru-
ary, 1912, and *secondly,* that the said assignments
heretofore mentioned were a violation of the covenant
against assignments of the lease without the lessor's
permission. I shall consider first the contention of
the defendant that the assignment for the benefit of
creditors by the plaintiff to Keith, as assignee, on
November 23, 1908, was such an assignment of the
lease in question as constituted a breach of the cove-
nant not to assign the lease without the assent of the
lessor. The assignment for the benefit of creditors

was not made with the consent of the lessor. In the case of *Watkinson* v. *Inglesby & Stokes*, 5 Johns. 385, 390, the court say: " The word assign has various significations, and it must 'be taken according to the subject matter. Its meaning is to set over or transfer, and when applied to movables a delivery will satisfy it." The subject matter of the assignment in the case at bar includes not alone the lease in question, but also the purpose and effect of the assignment. This covenant is incorporated in a lease for the benefit of the landlord to prevent the occupancy of the leased premises by undesirable and financially irresponsible persons, and as it involves a forfeiture and is not favored by the courts it must be construed strictly against the lessor and liberally in favor of the lessee. Wood Landl. & Ten. (2d ed.) 714; *Hitchcock* v. *Northwestern Ins. Co.*, 26 N. Y. 68; *Griffey* v. *New York Cent. Ins. Co.*, 100 id. 417; *Riggs* v. *Pursell*, 66 id. 193, 201. To justify a forfeiture it must appear clearly that the lessee's act, if allowed to prevail, would give his assignee the right to the whole term and estate of the lessee, irrespective of the wishes of the lessor. The covenant in question refers to an assignment of the whole lease, not to a part of the term nor to an interest in it. The nature of an assignment of a lease is set forth quite fully in Wood on Landlord and Tenant (2d ed., chap. 33, p. 708). An assignment of a lease, as commonly understood, means an absolute transfer of the whole term and estate of the lessee to a person who is a stranger to the lease. It is by way of contract. The person to whom the lease is assigned is called the assignee of the lease, and, when the assignment of the lease has been delivered, the assignee, upon the acceptance of the assignment, becomes the assignee, whether he ever enters upon the premises or not, and assumes fixed liabilities. The lessee is liable by privity of

estate and contract, and his assignee is liable only by privity of estate. After the assignment the lessee ceases to be liable by privity of estate, but remains liable on the covenants of the lease. The word assign has a very broad meaning, but as used in this covenant its meaning is limited, as above stated, to an absolute transfer of the whole estate and term of the lessee. A sublease has been held not to be an assignment of a lease, as has also a mortgage of a lease. *Roosevelt* v. *Hopkins,* 33 N. Y. 81; *Riggs* v. *Pursell,* 66 id. 193, 200; *Dunlop* v. *Mulry,* 85 App. Div. 498. By custom and law an assignment of a lease means such an absolute transfer of all the term and title of the lessee by way of sale or gift to a stranger or outside party as carries an indefeasible title, upon performance of the covenants, to the entire term and title of his lessee without restriction. It means a contract by which another person is brought in in the place and stead of the lessee as a tenant of the lease — a new financial responsibility. An assignment of a lease creates no new estate, but transfers an existing estate into new hands, while a lease or sublease creates a perfectly new estate. Wood Landl. & Ten. (2d ed.) 146; *Dunlap* v. *Ballard,* 131 Mass. 161, 162. Therefore any assignment, transfer or setting over of a lease which does not come within the purview of the above description cannot be considered as an assignment of the lease as the term is generally known and legally defined and used in covenants against assigning. An examination of the character of an assignment for the benefit of creditors will show that it does not come within the above description either in purpose or effect. The right to make an assignment for the benefit of creditors was known at common law. In this state it has become a well known statutory proceeding. The right to make such an assignment is recognized, not created.

by the statute, but the procedure is defined and the right safeguarded and limited by the statutes of the state. Unless the statutes are complied with it is not a general assignment for the benefit of creditors as recognized by the laws of this state. *Matter of Rutaced Co.,* 137 App. Div. 716; *Young* v. *Stone,* 61 id. 364, 368; affd., 174 N. Y. 517. One of the chief requisites of such an assignment is that the assignor shall place all his property, both real and personal, in the possession of his trustee. The failure to do so makes the assignment under the statutes absolutely void. "The material and essential characteristic of a general assignment is the presence of a trust. The assignee is merely trustee and not absolute owner. He buys nothing and pays nothing, but takes the title for the performance of trust duties." *Brown* v. *Guthrie,* 110 N. Y. 435, 441. The person to whom the assignor's property is assigned is called the assignee. There is no contractual relation between the assignor and the assignee, as in the case of an ordinary assignment. He takes by way of appointment and not by way of contract. *Chapin* v. *Thompson,* 89 N. Y. 271, 279, 280. "The assignee derives all his power from the assignment, which is both the guide and measure of his duty. Beyond that, or outside of its terms, he is powerless and without authority." *Matter of Lewis,* 81 N. Y. 421, 424. In this state an assignment for the benefit of creditors is one of the enumerated express trusts. Real Prop. Law, § 96. The legal estate of the assignor for the benefit of creditors vests in the assignee, subject to the execution of the trusts. Real Prop. Law, § 100. The title of the assignee is not an absolute one as owner, but a qualified one. Real. Prop. Law, §§ 101, 102. By the instrument of assignment for the benefit of his creditors the plaintiff in the case at bar provided for the reversion to himself, his ex-

ecutors, administrators or assigns of whatever was left in the trust estate after the execution and termination of the trust. And this right of reversion exists although by the instrument of assignment all of the property was made subject to sale for the benefit of his creditors. The assignee is empowered to consume all of the property of the assignor, just as he himself might do, to pay the creditors, but this power does not prevent the creation of a reversion in favor of the assignor. See *Leggett* v. *Firth,* 132 N. Y. 7; *Delaware, L. & W. R. R. Co.* v. *Scranton,* 34 N. J. Eq. 429, 430. The nature of the title which vests in the trustee is well settled in *Townshend* v. *Frommer,* 125 N. Y. 446, 455. It is true that in that case the trust was simply to receive the profits of the lands and to apply the same to the grantor's use during life, but the title which the trustee took was the same as is vested in all trustees, including an assignee for the benefit of creditors, a legal estate, subject to the execution of the trust. The court said: " Under that conveyance the grantee, as trustee, was vested with the whole legal and equitable estate, subject only to the execution of the trust imposed, and every estate and interest, not embraced in the trust and not otherwise disposed of, by force of the statute, remained in and reverted to the grantor, or creator of the trust, and her heirs, as a legal estate. * * * By the 61st section of the statute, it is declared that the effect of the 60th section, which vests the whole legal and equitable estate in the trustee, shall not be to prevent the creator of a trust from declaring to whom the lands, to which the trust relates, shall belong upon the termination of the trust. This provision, so obviously negative in its character, was, undoubtedly, intended to prevent a construction of the previous, or 60th, section, by which the grantor might be deemed incapacitated from mak-

ing a disposition of the lands affected by the trust upon its termination. The section created no new power of disposition, but recognized the existence of a right, which had not been affected by the declaration of the quality of the estate which the trustee of a valid express trust would take. Therefore, Mrs. Curtis, after creating a valid express trust for her life, in proceeding in the deed to direct a further disposition of her lands upon the termination of the trust by her own decease, was exercising the legal right which inhered and remained in her to dispose in a certain way of the legal estate then remaining. § 62. Had she gone no further than to create the trust for her life, then, unquestionably, the reversion as a legal estate would have remained in her and her heirs. That is clear from the statute." In *Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39, 44, the court said: "Although the legal estate is in the trustee, he but possesses a naked right, which is to be exercised, not for his own benefit, but for that of another. His estate is commensurate with the trust duties imposed upon him and it ceases when they are performed, or when they are at an end. * * * The argument that the constitutional guaranty against the deprivation of one's property without due process of law has its application to the case of this trustee is in my opinion unsound. That guaranty exists for the protection of the citizen's property against arbitrary legislation, and every arbitrary proceeding, which does or may affect it. But what is there about the right, or estate, of a trustee, which involves the idea of 'property' as that term is commonly understood and as it was undoubtedly employed by the framers of our Federal and State constitutions? To the ordinary mind, and that is one of the best tests in interpreting statutes, the term 'property' suggests some unrestricted, or exclusive, right to that which has

been created, or acquired. It is an inherent right to the dominion over, and the beneficial enjoyment of, some valuable right, or interest. How can that be predicated of the estate of a trustee? He exercises certain powers for the sole benefit of the *cestui que trust.* He has no beneficial interest and he can be removed whenever, in the judgment of a court of equity and by the exercise of its inherent power, it becomes necessary, and independently of the instrument of his appointment. * * * His right or interest lacks those elements of ownership, which are associated in our minds with the idea of property.'' So also it is apparent that the right or interest of an assignee for the benefit of creditors '' lacks those elements of ownership, which are associated in our minds with the idea of property.'' He has no exclusive right to the property mentioned in the instrument of assignment. He possesses but a '' naked right,'' which is to be exercised not for his own benefit, but for that of another. When he has performed his trust duties the property not used by him to carry out the trust reverts to the assignor and the assignee's power is at an end. On the other hand, an assignee under an ordinary assignment is not a trustee, his estate is not a trust estate, and he does acquire property for himself. An assignment for the benefit of creditors is made subject to the provisions of the statutes in regard thereto. Any necessary provision or any limitation provided by statute and not contained in the deed of assignment is deemed to be incorporated in such instrument as if written therein at length. *Richardson* v. *Thurber,* 104 N. Y. 606. In cases of general assignment '' under the present law the conversion, disposition and distribution of an assigned estate constitute from the recording of the assignment a proceeding in court and that the administration of the estate, though

made by the assignee who, in the first instance at least, is selected by the assignor, is really made by the court under the power granted it by statute to control such administration." *Matter of Sheldon,* 173 N. Y. 287, 291. Under section 110 of the Real Property Law, applicable to personal property also, the assignor in the deed of assignment may fix a time, a reasonable time, within which the trust shall be carried out and terminated. That section provides: "Where an estate or interest in real property has heretofore vested or shall hereafter vest in the assignee or other trustee for the benefit of creditors, it shall cease at the expiration of twenty-five years from the time when the trust was created, except when a different limitation is contained in the instrument creating the trust or is especially prescribed by law. The estate or interest remaining in the trustee or trustees shall thereupon revert to the assignor, his heirs, devisee or assignee as if the trust had not been created." See, also, *Kip* v. *Hirsh,* 103 N. Y. 565; *Mills* v. *Husson,* 140 id. 99, 103. It is true that the deed of assignment must provide for the sale of the property of the assignor for the purpose of satisfying the claims of his creditors, but it is also true that the said trust for the benefit of creditors may be terminated before sale by a compromise or payment in full to all the creditors by the assignor. Cases of assignments for the benefit of creditors where no sale of the assigned property has been made, but where all the property has been returned to the assignor, are of frequent occurrence. All this emphasizes the correctness of the position that the assignee takes no property in the ordinary sense under the assignment, but is merely the representative of the assignor in the payment of his debts, and accountable to the assignor for all property not used by him for that purpose. *Matter of Lewis,* 81 N. Y.

421, 424, cited in *Roberts* v. *Victor,* 130 id. 597. The lease in question here is assignable by the assignee only, with the consent of the landlord. The absolute right to sell the lease is not vested in the assignee for the benefit of creditors by the deed of trust the same as it would be in the case of an estate in fee. The lessee also is restricted from assigning the lease without the lessor's consent. In other words, the assignee for the benefit of creditors stands in the place of his assignor and is limited to the same extent, with no other or greater rights than those of his assignor. He takes possession of the property subject to every equity and claim that may be asserted by third parties. *John P. Kane Co.* v. *Kinney,* 174 N. Y. 69, 74, 75. I have examined the case of *Briggs* v. *Davis,* 20 N. Y. 15, which held, at page 28, that the assignor had a legal estate in the assigned premises against all persons except the trustee and those claiming under him, which estate he could grant or devise. In the same case (21 N. Y. 574) the prior decision was modified, the court holding, at page 577, that a grantee of the assignor would have no estate, legal or equitable, as against the trustees or those holding under them. Both of these cases were decided long before the passage of the act of 1875, from which section 110 of the Real Property Law is taken, expressly recognizing the estate of reversion or remainder in the assignor. I have also examined the case of *Schroeder* v. *Gurney,* 73 N. Y. 430, where it was held, at page 434, that the assignor was divested of all title except a possible contingent remainder, and the case of *People ex rel. Short* v. *Bacon,* 99 N. Y. 275, where the court held that this right which the assignor had was merely an equitable one. Both of these latter cases, however, were based upon the authority of *Briggs* v. *Davis, supra,* and evidently the act of 1875 heretofore re-

ferred to was not considered by the court. Furthermore, the later cases of *Townshend* v. *Frommer* and *Metcalfe* v. *Union Trust Co., supra,* hold to the contrary. Another feature which differentiates an ordinary assignment of a lease from an assignment for the benefit of creditors is that in the former case the assignee accepts the lease by the mere act of accepting the assignment, while in the latter he accepts a mere right or option to accept the lease. He may reject the lease if he deems it advantageous to do so. In the one case a contractual relation is established by his acceptance of the assignment. In the other the acceptance of the lease is an official act as assignee and no contractual relation is created. If the assignee for the benefit of creditors accepts the lease he becomes liable by privity of estate, but not by privity of contract. *Journeay* v. *Brackley,* 1 Hilt. 447, 452; *Carter* v. *Hammett,* 12 Barb. 253, 263; *Walton* v. *Stafford,* 14 App. Div. 310, 312; affd., 162 N. Y. 538; *Man* v. *Katz,* 40 Misc. Rep. 645. And such is the law also in bankruptcy. See *Matter of Scruggs,* 205 Fed. Rep. 673, 677. In the case of *Tompkins* v. *Hunter,* 149 N. Y. 122, the court said: '' That act did not in terms include any conveyance or transfer other than a general assignment. When it was passed, the character of such an assignment was well understood. *There is a broad and well defined distinction between such an assignment and a deed or bill of sale. The former is a transfer by a debtor of his property to another in trust to sell, convert it into money, and distribute the proceeds among his creditors. It implies a trust, and contemplates the intervention of a trustee. The others import an absolute sale and transfer of the title, to be held and enjoyed by the purchaser without any attending trust.''* If an assignment for the benefit of creditors constitutes a breach of a covenant against

assignment strange results may follow. A person has a lease with the usual restriction against assignment. Until the assignee elects to take the lease, the lease remains in the lessee and there has been no assignment thereof. If the assignee elects to take the lease, the landlord could elect to terminate the lease as a violation of the covenant. The election of the assignee to take the lease would have the effect of breaking the lease. To go a step further. After the assignee has elected to take the lease and the landlord has elected to terminate and has terminated the lease by reason of the breach of the covenant, the lessee goes into or is thrown into bankruptcy within four months after the making of such general assignment. Then, as the assignment for the benefit of creditors is absolutely void, the action of the landlord in terminating the lease would also be void. The lease would then go back to the lessee and pass to the trustee in bankruptcy, if he elected to take it, or, if he declined to take it, it would have to remain in the lessee, thus circumventing entirely the right of the landlord to terminate the lease. The hypothetical case is extreme, but not impossible. We must conclude that without an express provision to that effect this covenant does not prevent the lessee from taking advantage of the statutory assignment for the benefit of creditors. It forbids only the ordinary out and out transfer of a lease to an outside party as absolute owner without the aid of any additional instrument or deed or statutory proceeding. As stated above, whether or not a lease passes under a deed of assignment for the benefit of creditors depends upon the election of the assignee. The transfer of the lease, if it takes place, is rendered effective not by the deed of assignment, but by acts done under the assignment by the assignee in his official capacity. The law provides that the act of

election to take by the assignee shall pass the lease to him. This right to exercise this election was surely not given the assignee for the purpose of stripping the debtor of his property or depleting the assigned estate. The mere election of an assignee to take a lease containing this covenant would of itself breach the covenant, if it is to be held that this form of assignment is within the prohibition of the covenant. The lessee has the title to the lease until such election by the assignee. The assignee, and not the lessee, in such a case breaches the covenant, if such election is a breach. It would be better for the lessee and the creditors to have the assignee decline to take the lease. The possession of the assignee under his election to take is in effect the possession of the assignor. There has really been no change of possession, no new liability incurred. It is the assigned estate that is liable for the rent, as well as the assignor personally. It is true the assignee gets the legal title to the assignor's property, but the words "legal title" are misleading when used with reference to a lease. What the assignee really acquires by his election to take the lease is the lessee's right to occupy the leasehold premises and under the same conditions as his agent for the purposes of the trust. The principal's money, the assigned estate, must pay the rent. There is, in fact, no question of lease or of sublease or of assignment of lease. In plain English, free from all legal verbiage, the lessee has simply put his agent, the assignee, in possession of the leased premises for an indefinite time, until the purposes for which the trust was created are satisfied, the lessee continuing to pay the rentals out of the assigned estate until the trust terminates, when the lease reverts to the lessee just as if he had never made the assignment for the benefit of creditors. Mr. Justice Leventritt, in *John P. Kane Co.* v. *Kinney*, 35 Misc. Rep.

1, 3, used the following language: "An ordinary assignment and one for the benefit of creditors have nothing in common save a partial similarity of name. Each belongs to an entirely different group of contracts, and, · disregarding words and considering merely the idea, two entirely unrelated concepts result. To constitute an assignment for the benefit of creditors, there must be voluntary transfer by a debtor of all his property to an assignee for the payment of his debts (3 Ency. of Law, 6), and in this State the assignee is simply a trustee and not the absolute owner." The assignee has no absolute right to occupy the leasehold through all its term. His naked right of occupation is coextensive with and limited by the life of the trust. The interest of the lessee as absolute owner of the lease never passes to his assignee in an assignment for the benefit of creditors. There is no passing of an existing estate to the assignee, but rather the appointment of a trustee, a representative, an agent, to hold the leasehold for certain purposes; a holding in trust until those purposes have been accomplished, and not the absolute transfer of the whole interest and term of the lease. This review and comparison of the two kinds of assignment show plainly the radical difference between them. The one is a peculiar instrument required by law to begin a proceeding to pay off debts of the debtor, while the other is an instrument well known and commonly used to transfer property. The two things have nothing in common. We must interpret the covenant by adopting the usual and common meaning of the word "assign" and not its unusual and peculiar meaning. It follows that the assignment for the benefit of creditors made by the plaintiff was not a breach of the covenant not to assign. The case of *Medinah Temple Co.* v. *Curry,* 162 Ill. 441, is against the conclusion reached in this opinion. In that case

the court used the following language: '' It is clear
*  *  *  that a voluntary assignment of a leasehold
estate, when accepted by the assignee, has the same
effect as would the sale and transfer of the lease to
a purchaser in the ordinary way.'' The court there
assumes, without explaining, an identity between an
assignment for the benefit of creditors and an ordinary
assignment to a purchaser. We find in the opinion
no consideration of the nature, purpose and effect of
an assignment for the benefit of creditors, and no
reason for the conclusion reached except the very gen-
eral statement that an assignment for the benefit of
creditors transfers the title of all the assignor's prop-
erty to the assignee. The very many points of differ-
ence between the two forms of assignment, and the
radically different titles, positions and estates held by
the assignee under them, seem not to have been con-
sidered by the court. At least an examination of the
opinion will give that impression. I think the weight
of authority and sound reason do not support the con-
clusion reached by the court in that case. However,
the question whether the general assignment of Novem-
ber 23, 1908, was or was not a breach of the covenant
against assignment of the lease becomes immaterial in
view of what happened after November 23, 1908. The
lessor (defendant here) by the notice of election to ter-
minate the lease and the commencement of the eject-
ment action in 1910 unquestionably terminated the
lease. Notwithstanding this abrogation of the lease
the lessor and lessee could waive the breach and the
rights derived by the service of the notice of election
to terminate and the beginning of the ejectment action,
and so revive, reinstate and continue the lease. The
issuance of a warrant in summary proceedings breaks
the lease, but acceptance of rent after its issuance
operates as a waiver of the right to consider the lease

abrogated and so does also acceptance of rent after a
forfeiture.   *Seigel* v. *Neary*, 38 Misc. Rep. 297–302;
*Voorhies* v. *Cummings*, 42 App. Div. 260; *Hinton* v.
*Bogart*, 78 Misc. Rep. 46, 47; *McIntosh* v. *Rector*, 120
N. Y. 7, 13; *Conger* v. *Duryee*, 90 id. 594; Wood Landl.
& Ten. (2d ed.) 122; *Coon* v. *Brickett*, 2 N. H. 163, 165;
*Dockrill* v. *Schenk*, 37 Ill. App. 44; *Frazier* v. *Caruthers*,
44 id. 61; *Hunt* v. *Osterhoudt*, 11 Barb. 35.   The sworn
statement of the landlord that this plaintiff was the
lessee and that he was indebted for rent due under the
lease long after the service of the notice of election to
terminate the lease and commencement of the eject-
ment suit in 1910 on the ground of forfeiture by reason
of the assignment, and the acceptance by the landlord
of rent for six months after the final disposition
against her of the second summary proceeding, Decem-
ber 15, 1911, and down to and including the month the
tender of the $60,000 was made, and the continued
acknowledgment by defendant of this plaintiff as lessee
by the acceptance of rent from him after the service
of the notice in April, 1912, of intention to exercise
the option to buy the premises, certainly were an abso-
lute waiver of any forfeiture and of any right which
accrued by reason of the service of the notice of elec-
tion to terminate the lease and the commencement of
the ejectment suit, and reinstated and continued the
lease the same as before.   This plaintiff was in posses-
sion as lessee when the tender of July 9, 1912, was
made, as far as the rights of the landlord were con-
cerned.   The contention of the defendants that the
amount tendered was not sufficient because the plain-
tiff did not offer again to pay the rent which the land-
lord had previously refused to accept is without merit.
By the previous tender of the rents this plaintiff had
performed his part of the covenants.   On the tender
already made and the exercise of the option to buy,

plaintiff was not obliged to make a tender of the rents again. It is because of this previous tender of the rents that he was in a position to exercise the option. If he had not paid or tendered the rents he would have been in default. His tender once is full performance on his part, and he was not obliged to repeat performance by tendering a second time the rents which the landlord had refused to accept. Of course, on the closing of the title the unpaid rents must be paid without interest, subject to any proper offset. There should be judgment for plaintiff directing a conveyance of the property as of July 9, 1912, with costs. Settle decision and decree upon notice. Counsel will be heard upon the question of allowances upon the settlement of the decision and decree.

Judgment for plaintiff.