In the Matter of PETER W. GALLAUDET and Another, Individually and as Copartners, etc.

Supreme Court, New York County, March 31, 1927.

Trusts — termination — proceeding for judicial settlement of account of substituted assignee under deed of assignment executed by copartners in trust for benefit of creditors in 1890 — creditors made no affirmative move for disposition of estate for thirty-five years — instrument contained no limitation as to duration of trust — Real Property Law, §§ 109, 110, providing for termination of trust on cessation of purposes, and limitation to twenty-five years, applies — trust estate terminated in 1915, twenty-five years after execution of instrument — petitioner, as surviving partner, entitled to undistributed funds — death of substituted trustee vests trust in Supreme Court.

In this proceeding for the judicial settlement of an account of a substituted assignee under a deed of assignment, executed by copartners, in trust for the benefit of their creditors in 1890, it appears that for upwards of thirty-five years no affirmative move was made by any creditor for disposition of the estate, and that, except to file accounts, the original and substituted assignees remained quiescent. Since the instrument contained no limitation as to the duration of the trust it must be deemed to have lapsed twenty-five years after the execution of the assignment, or in 1915, within the meaning of sections 109 and 110 of the Real Property Law, providing that when the purpose for which an express trust is created ceases, the estate of the trustee also ceases, and limiting to twenty-five years the duration of any such trust, and providing for the reversion of the estate to the assignor; therefore, the petitioner, as the surviving partner, is entitled to an order declaring the trust estate terminated, and to the undistributed fund in the hands of the executrix of the surviving assignee.

Since the substituted trustee has died, the trust is now vested in the Supreme Court, and a trustee is appointed for the purpose of effecting, under the direction of the court, the distribution of the fund in question.

PROCEEDING involving assignment by members of partnership in trust for benefit of creditors.

*A. Frank Cowen* [*Herman Hoffman* and *Bernard Cowen* of counsel], for the petitioner Harry Fitch and Belle G. Beveridge, as administrator of Peter W. Gallaudet, deceased.

*Wingate & Cullen* [————————— *Wingate* of counsel], for Emma C. Minor and Daniel F. A. Minor, administrator of C. Elliott Minor, deceased.

*Maurice S. Cohen,* for Max Stern, substituted assignee.

*James A. Beha,* for Anthony J. O'Reilly, administrator of Anthony O'Reilly.

*A. H. Seymour,* for the National Surety Company.

*John F. Halstead,* for Moses Lyman and Moses Lyman, Jr., individually and as executor, and others.

*Thompson, Freedman & Cooke* [*Philip V. Brown* of counsel], for the First National Bank of City of New York, as successor to United Bank Building, and Emiline Roach, as administratrix of John Roach, deceased.

*John B. Bruyn,* for the estate of P. V. S. Pruyn, deceased.

*DeForest Bros.* [*Robert Thorne* of counsel], for the estate of Margaret O. Sage, deceased.

*Lord, Day & Lord* [—————————— *Heminway* of counsel], for the Second National Bank of New Haven, Conn., and the New Haven Bank.

ERLANGER, J. On November 17, 1890, Peter W. Gallaudet and Henry Fitch, Jr., individually and as copartners of the firm of P. W. Gallaudet & Co., by an instrument in writing, duly executed, assigned all of their individual and firm property to one C. Elliott Minor in trust for the benefit of their creditors. Thereafter an inventory of the assigned estate, together with a schedule of their creditors, was duly filed. In 1893 an action for an accounting was instituted in the Court of Common Pleas of New York county by William and Edward Eggert against the above-named assignee and assignors. Subsequently the assignee filed his account, which was referred to a referee to take and state. On the coming in of the report a final judgment was entered thereon on August 10, 1894, confirming the same. The assignee was charged with the sum therein specified, together with a claim in litigation involving a substantial block of stock of the Houston and Texas Central Railroad Company. The judgment, among other things, also directed that the assignee reserve from the funds in his hands the sum of $2,150 to meet the expense to be incurred in the litigation involving the stock referred to and other expenses, including his final accounting. The judgment further provided for the distribution by the assignee of the remainder of the funds with which he was charged among the preferred and other creditors mentioned therein and in the proportion stated. The dividends were accordingly paid prior to December 31, 1898. Some time in 1903 Peter W. Gallaudet, one of the assignors, died, leaving him surviving as his sole lawful issue Belle G. Beveridge. Upon such death Henry Fitch became the sole surviving partner of the assignor's firm. In February, 1919, the assignee died, leaving a will, in which his widow, Emma. Minor, was named as executrix, and she thereafter qualified as such. Two years later, in February, 1921, the said executrix, through her

attorney, caused the surviving partner, who was then well advanced in years, to verify a petition praying for the appointment of her attorney as substituted assignee in place of the original assignee, C. Elliott Minor, deceased. An order on said petition was made in March, 1921, requiring the creditors and all persons interested to show cause why such appointment should not be made. Thereafter, and in September, 1921, the said attorney was appointed as substituted assignee. The order, among other things, provided that the executrix of the deceased assignee account for the acts of the deceased and turn over to the substituted assignee the remainder of the assets in the hands of the deceased at the time of his death, less commissions and other expenses of such accounting. On January 21, 1926, the substituted assignee received a substantial sum of money as the result of the litigation involving the stock of the Houston and Texas Central Railroad Company, above referred to. Dates of events were deemed important, and the foregoing briefly outlines them. From the creation of the trust in 1890 down to the time of the commencement of the proceedings hereafter mentioned upwards of thirty-five years have elapsed. No steps were taken in court in the assigned estate by any one since the accounting proceedings in 1893, which resulted in a distribution of the funds then on hand, except to appoint the substituted assignee. The original assignee from the time of his appointment in 1890 up to the time of his death in 1919, a period of twenty-nine years, did nothing other than the filing of his account, nor did any of the creditors of the assigned estate set in motion the machinery of the court in his or their behalf in all these years. From 1919 to September, 1921, the estate had no directing head. The trust devolved upon this court under the statute, but despite this not one of the creditors applied for relief in this situation. It is not intended by these statements to infer that the assignee did not faithfully administer the trust confided to him. It may be conceded that he fully performed his duty. He failed, however, to keep pace with the lapse of time. Years rolled by and the laws of the State were either lost sight of, and if not that, a mistaken belief as to their force and intent was minimized. The creditors, many of whom were represented by counsel so far as the record discloses, remained quiescent. The courts were functioning, however, and an application by any one of the interested parties for instructions in respect of the main asset of the estate in litigation, and the disposition to be made thereof, would unquestionably have resulted in an order in their favor, but even this was not done until finally the surviving partner made an

48

application to this court in February, 1926, to have the trust declared at an end and all the property remaining in the hands of the substituted assignee turned over to him. At the time of the appointment of the substituted assignee thirty-one years had gone by, and by then, as will be shown, the trust no longer existed so that nothing that he could have done would have saved the lapsing of the assigned estate. When the application to declare the trust estate terminated came on for hearing, numerous counsel appeared in opposition, and voluminous papers were submitted, which made the ascertainment of the dispute extremely difficult. It was shown that there had been no accounting by either the original or substituted assignee, covering a period of upwards of thirty years. In these circumstances the substituted assignee was directed to file his account, and a referee was appointed to take and state it, and at the same time to hear all objections, if any, which might be made thereto. The referee was also directed to take proof and report the testimony in respect of the petitioner's claim, and of the facts set forth in the affidavits submitted by all parties. Notice was also required to be given by publication to all persons interested in the assigned estate, thirty days in advance of the date of the first hearing before the referee, and by mailing such notice to all persons concerned in the controversy twenty days before such hearing. Pending the reference, Emma C. Minor, as executrix of C. Elliott Minor, the original assignee, filed in the office of the clerk of this court a verified account together with a petition for the judicial settlement thereof. In view of the fact that all parties interested in such account were already before the referee, it was consented that he proceed to take proof in support of the account and hear objections thereto, to the end that the matters could be finally disposed of in the pending proceeding. In November, 1926, and after the completion of the hearings before the referee and before the filing of his report, the substituted assignee died and letters testamentary were thereafter issued to his widow and daughter, who later were made parties to the accounting proceedings and who duly appeared therein. The referee has made and filed his report and has also reported the evidence taken before him as required by the order of his appointment. In view of the stipulation filed with him and annexed to his report, such report in so far as it relates to the accounts taken and stated by him is in all respects confirmed. The only question remaining relates to the one raised by the petitioner, namely, did the trust cease by lapse of time, and is he entitled to the undistributed fund? In the deed of assignment no time was fixed for the duration of the trust. It may fairly be assumed that it was to continue until the debts of the assignors

were paid in full. Not being measured by time, the assignees or their successors could continue *ad infinitum* unless the law declared otherwise. It is evident that to meet such a situation and to clarify it chapter 545 of the Laws of 1875 was enacted, amending section 67 of the Statute of Uses and Trusts (1 R. S. pt. 2, chap. 1, tit. 2, art. 2, § 67), and since that time, unless a different limitation was contained in the instrument, the trust was to be deemed discharged at the end of twenty-five years, and the estate transferred to the trustee and not by him granted or conveyed was to revert to the grantor or grantors, his or their heirs or devisees or persons claiming under them, to the same effect as though such trust had not been created. When the deed of assignment was executed in 1890, in the instant case, that law was in full force and effect, and no different limitation appearing in the deed the statutory period must be read into it as if the said provision formed part of it. (*Richardson* v. *Thurber*, 104 N. Y. 606.) Sections 109 and 110 of the Real Property Law (formerly Laws of 1896, chap. 547, §§ 89, 90) relate to the same subject. By section 109 it is provided that when the purpose for which an express trust is created ceases the estate of the trustee shall also cease. Section 110 differs only from chapter 545 of the Laws of 1875 in phraseology. The twenty-five-year limitation therein appears, as does likewise the reversion to the assignor at the end of that time. These two sections are so related that they must be read together and when so read are decisive of the question on the pending application. A trust for the benefit of creditors is regulated by the same rules that appertain to other trusts. (*Paddell* v. *Janes*, 84 Misc. 212.) And the statutory period applies to personal property as well as realty, or to both. (*Mills* v. *Husson*, 140 N. Y. 99.) In November, 1915, the twenty-five-year period expired and the trust *eo instanti* ceased. In *Kip* v. *Hirsh* (103 N. Y. 565, 572) it was said that the time fixed in section 110 of the Real Property Law is to be regarded as a statute of limitation. It is contended by the creditors that because of a provision in the order of August 10, 1894, made in the Eggert action, directing the assignee to reserve out of the fund in his hands a fixed sum for expenses in the litigation involving the Houston and Texas Central securities, the running of the statute was meantime suspended. With regard to that contention it need only be said that the order has no such potential effect. The time having been fixed by statute nothing can stop its running save only the exceptions found in the act itself. (*McIver* v. *Ragan*, 2 Wheat. 25; *Bank of the State of Alabama* v. *Dalton*, 9 How. [U. S.] 522; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 138; *Barker* v. *Millard*, 16 Wend. 572; *Yates* v. *Wing*, 42 App. Div. 356.) The creditors also seek to save the estate

by invoking against the petitioner the doctrine of estoppel. The record is barren of any fact justifying the interposition of that rule. My conclusion is, the trust having expired, the petitioner is entitled to the fund on hand as shown in the referee's report. The substituted trustee having died the trust 's now vested in the Supreme Court. The order to be made hereon should provide for the appointment of some person to act as trustee merely for the purpose of effecting under the direction of the court, the distribution of the fund in question. Thomas J. Garrity is appointed as such trustee upon the giving of a bond, the amount of which will be fixed on the signing of the order. This practice was followed in *Robinson* v. *Schmitt* (17 App. Div. 628). Submit order.