WILLIAM E. WOOLLARD, Respondent, v. SCHAFFER STORES COMPANY, INC., Appellant, Impleaded with JAY L. WOOLMAN, Doing Business under the Name and Style of " WOOLMAN BROTHERS," Defendant.

Third Department, January 15, 1936.

*Schaffer & Sevits* [*I. Maurice Wormser* and *Harry M. Schaffer* of counsel], for the appellant.

*Woollard & Morris* [*Michael D. Reilly* of counsel], for the respondent.

CRAPSER, J. The action was brought for a declaratory judgment declaring the rights of the parties to the lease between the plaintiff and defendant Schaffer Stores Company, Inc., and for a judgment declaring the lease forfeited and for damages suffered by the plaintiff. The defendant Jay L. Woolman does not appeal.

The lease in question was made on the 19th of May, 1933, between the respondent and the appellant and covered the entire premises at 67 North Pearl street in the city of Albany. The premises were to be occupied and used as a food store, food shop, including the right to use as a restaurant and lunchroom, for a term of three years from the 1st of September, 1933. The rent was $500 a month in advance and one per cent of all gross sales in said premises. The lessee was not to assign the lease nor let or underlet the whole or any part of the said premises except with the written consent of the landlord under penalty of forfeiture and damages. It was to use substantially the entire main floor for its own purposes but the remaining parts of the building it could sublet for other lines of merchandising, subject to the one per cent of gross sales to the landlord. It was provided that the one per cent of gross sales was a material and important factor of the lease and that the lessee was to make the necessary alterations and conduct its business, similar to the business carried on in its other Albany stores, and it was to use the first floor of the Pearl street level as a food center or market. It was to advertise its business and not to carry on a similar business within four city blocks. If the lessee failed for any reason to conduct its business on the leased premises then it agreed to pay the lessor, in lieu of percentages of sales, the sum of twenty-five dollars a day for each and every business day it might not conduct the said business therein.

These provisions were inserted for the reason that, in the opinion of the landlord, the minimum rental reserved was less than one-half the present fair market rental value of the premises and to prevent the lessor from being deprived of his income through the failure of the lessee to carry on said business.

It was provided that the tenant might remove the stairway leading from the North Pearl street level and to arrange and alter the premises to suit its business and interests and to provide an entrance from the North Pearl street level to the basement, but not to make any other changes except with the permission in writing of the landlord.

The lease also contained the clause that if default be made in the performance of any of the covenants that the relationship of landlord and tenant, at the option of the landlord, should wholly cease and terminate, after ten days' written notice from the landlord and failure to comply therewith. The lease also provided that the lessee might assign and sublet this lease upon the following conditions:

"A. The Lessee shall continue liable to the landlord for the prompt payment of the rent reserved herein and for the performance of all the other obligations, conditions and covenants of the Lessee herein.

" B. In the event that the demised premises be used for a purpose other than that as provided to be used by the Lessee herein, and the one per cent (1%) of sales shall not equal $7500 a year, the Lessor shall receive $7500 for said year in lieu of the said one per cent (1%) of sales, the same to be payable monthly in advance in equal instalments of $625 per month."

The building in question was located on the east side of North Pearl street and extended from North Pearl street easterly to James street. Its frontage on North Pearl street was thirty feet and its depth to James street was two hundred and twenty feet. The North Pearl street level was called the main floor  Under the main floor was a basement, the floor of which was on the James street level. There were three stories above the main floor fronting North Pearl street. The total area of the main floor was 6,600 square feet. The three stories above the main floor extended back only about fifty-one feet. There was no direct entrance from North Pearl street to the basement or the upper floor. The property facing North Pearl street was over eighty years old. It was built originally as a residence, many years ago, and it consisted of three sections. The main section was built on James street and subsequently a building was constructed connecting these structures. The front stores, as rented, had two large store windows on North Pearl street.

The appellant utilized approximately 5,900 square feet of the main floor space for the sale of its goods, wares and merchandise and the remaining 700 square feet was sublet to subtenants, a restaurant or soda fountain, and a candy store. There were no partitions separating these from the rest of the Schaffer store and so far as the general public was concerned they were part of the Schaffer store, while as a matter of fact they were concessions in the Schaffer store. The lunch room or restaurant was rented to one Chakas and the candy concession was rented to one Rubin.

Memorandum, Plaintiff's Exhibit 8A, included one per cent of the sales of these concessions as a payment to the plaintiff.

The candy store only continued until January 1, 1934. The restaurant continued until August, 1934, and then vacated and on September 1, 1934, the appellant leased to J. L. Woolman a portion of the space on the main floor and basement of the premises in question, to wit, 700 square feet. The lease provided for payment on a percentage basis, the minimum annual rental to be not less than $4,500, payable in equal monthly installments; $1,500 was deposited by Woolman for the faithful performance of the contract. The portion sublet to Woolman was the portion formerly used as a lunchroom, restaurant and a candy counter. The alterations were to be made by the tenant Woolman. The plans were filed with the superintendent of buildings of Albany. Among these changes was the removal of the southerly ten feet of the store front and show window on the North Pearl street main floor level and the erection and installation in place thereof of a new and independent store front with two glass show windows and a tile entrance. The new store front had a width of ten feet, was about fifteen feet high and had a depth of twenty feet. It was constructed of glass. Partitions were constructed about fifteen feet high extending from the floor to the ceiling of the main floor on North Pearl street, with a ten-foot front on North Pearl street and running back seventy feet. The partitions were solid, without openings. A new ceiling was erected over the entire space, ten feet high, a new stairway was cut through the main floor to the basement, necessitating the cutting of some of the floor and one bearing beam. New partitions and a new wooden floor were placed in the basement on a level two and a half feet above the existing basement, a new ventilating duct was installed, and new and different plumbing and heating arrangements. This was all done without the knowledge of the plaintiff.

The plaintiff in passing by the premises discovered this on the 16th day of September, 1934, and on the 19th day of September, 1934, the plaintiff sent to the appellant the following notice:

" Re: Lease 67 North Pearl Street, Albany, N. Y.

" Whereas the undersigned has observed that you have sublet a substantial portion, approximately 12 feet in width and 81 feet in depth on the main floor, of the premises 67 North Pearl Street, Albany, New York, in violation of the terms of the lease entered into between you and the undersigned on the 19th day of May, 1933, you will please take notice that the undersigned hereby elects, pursuant to the terms of said lease, that the relation of landlord and tenant shall wholly cease and determine within ten days after receipt by you of this notice and that the said lease shall become void and of no effect and that the undersigned will re-enter the said premises and remove all persons therefrom unless within said ten days your default in the performance of the covenants of said lease aforesaid, be rectified."

And upon the same day he served upon Woolman a copy of the foregoing with notice that it had been served upon the Schaffer Stores Company, Inc., and it will be noted that the only grounds assigned is the subletting of the main floor to Woolman.

After the serving of the notice on the nineteenth rent was paid by Exhibit B, a check dated October 2, 1934, for the October rent, $500 was paid, which check was indorsed and cashed by the plaintiff.

The plaintiff attempted, without success, by correspondence with the appellant to have it understood that his acceptance of the rent check would be without prejudice to his rights. (Plaintiff's Exhibit 12; Defendant's Exhibits P, Q and R.)

From the record it appears that the subletting to Woolman did not reduce plaintiff's rental income from the demised premises, but such subletting was a violation of the lease and the alterations made in connection therewith were, as found by the referee, structural changes without the consent of the plaintiff. The notice, by the plaintiff, places his election to terminate solely upon the ground of the subletting of a substantial portion. The plaintiff did not place his election to terminate the lease pursuant to its terms, upon the alleged violation arising out of the breach of the structural clause. The respondent knew of such alleged breach of the covenant on September sixteenth, before sending his notice, and it must be assumed that, with that knowledge in mind, he deliberately waived that fact as a ground for the terminating of the lease.

The assertion of one ground of forfeiture so as to terminate a tenancy precludes the right to rely on another ground which existed at the same time, in an action involving a question of forfeiture. (35 C. J. 1084; *Brooks* v. *Rogers*, 99 Ala. 433; 12 So. 61; *Atkins* v. *Chilson*, 9 Metc. [Mass.] 52; 2 Tiffany Landlord & Tenant, pp. 1393 and 1394, in which the author says: " It has been decided also that

where the tenant has violated two conditions, the landlord cannot enforce a forfeiture for one of such violations, if he gives notice of an intention to enforce a forfeiture for the other violation.) "

There does not seem to be any New York case dealing directly with the point involved. However, the case of *Littlejohn* v. *Shaw* (159 N. Y. 188) is analogous. In that case it is held that the refusal to accept goods, based upon a particular objection, waives all others. The court further held: " When the refusal to accept purchased goods is based upon particular objections, formally and deliberately stated, all other objections are deemed waived; and the vendor in order to recover the price, need only prove compliance with the contract of sale in the particulars covered by the stated objections."

The November rent was paid by check, the plaintiff writing on the back, " Subject to litigation pending," indorsed it and kept the money. The December rent was paid by check, defendant's Exhibit F, and was indorsed and cashed by the plaintiff without any reservations. The January rent, Exhibit H, was cashed by the plaintiff without any reservations. Intermediate checks for the one per cent contained reservations written on the back by the plaintiff. The checks defendant's Exhibits K, L, M and N were cashed subject to reservations written on the back by the plaintiff. All of the notations were placed upon the back of these checks by the respondent after he had written to the appellant asking to be allowed to receive them subject to the litigation and after the refusal of the appellant and notification that they were tendered without strings, the respondent accepted them and cashed them and any indorsement upon them by the respondent, not agreed to by the appellant was a vain act without any legal significance whatever.

Assuming that the notice canceling the lease served on the nineteenth of September actually operated to cancel the lease on September twenty-ninth, then the plaintiff could not recover twenty-five dollars a day after that time as he has been permitted to by the judgment herein appealed from. The lease did not bind the tenant after its termination to pay anything and although the tenant remained in the premises the respondent would only be entitled to recover for the use and occupation because privity of contract would have ceased and privity of estate only would have remained.

The effect of acceptance of rent which has subsequently accrued is a waiver and cannot be changed by the statement of the lessor that he does not intend to waive his rights or that it is received subject to a litigation pending.

A restriction in a lease against subletting under penalty of forfeiture is waived by acceptance of rent after the subletting. (*Ireland* v. *Nichols*, 46 N. Y. 413, 417; *Paddell* v. *Janes*, 84 Misc. 212, 232, 233; 145 N. Y. Supp. 880; *Fischer* v. *Ginzburg*, 191 App. Div. 418; *Adams-Flanigan Co.* v. *Kling*, 198 id. 717; affd., 234 N. Y. 497; 1 Underhill Landlord & Tenant, p. 630; 2 Tiffany Landlord & Tenant, p. 1387; *Conger* v. *Duryee*, 90 N. Y. 594; *Murray* v. *Harway*, 56 id. 337; *Davenport* v. *The Queen*, L. R. [1877] 3 App. Cas. 115; *Croft* v. *Lumley*, 6 H. L. Cas. 672.)

The plaintiff waived the subletting by the receipt of the rent after the breach and after declaring forfeiture. I, therefore, favor the reversal of the judgment against the appellant appealed from, upon the law and the facts, and the dismissal of the complaint as to the appellant, with costs.

RHODES, McNAMEE and BLISS, JJ., concur; HILL, P. J., dissents.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.

The following findings of fact contained in the referee's report are reversed: Nos. 25 and 30; and all findings of fact contained in the portion of the decision captioned " Conclusions of Law " are reversed.

The following findings of fact contained in plaintiff's proposed findings are reversed: Nos. 5, 6 and 31 and all findings of fact contained in plaintiff's proposed findings of fact and conclusions of law, captioned " Conclusions of Law " are reversed.

The court makes the following finding of fact: That plaintiff's receipt and acceptance of the payment of rent accruing subsequent to the notice of election to declare a forfeiture was a waiver of the forfeiture. (See 247 App. Div. 844.)